# CASES DETERMINED

## January Term, 1876.

---

### CARPENTER VS. THE STATE.

CONSTITUTIONAL LAW. *(1) Query as to legislative power to submit claim against state to arbitration. (2, 3) Legislative provision for paying contractor with state a compensation determined outside of his contract, invalid.*

1. Whether ch. 323 of 1874 was designed to submit the plaintiff's claim against the state to arbitration, and make the report of the commissioners there named binding upon the state as an award, and whether the legislature has power to make such a submission, *quære.*
2. Said act contravenes sec. 6, art. IV of the state constitution, and the award of the commissioners under it is void, because it assumes to compensate the plaintiff for work done and materials furnished to the state under a contract, not at the prices specified in the contract, but by the rule of *quantum meruit* or *quantum valebant.*
3. The "extra compensation" to contractors with the state, forbidden by the constitution, includes all compensation *outside* of that provided for by the contract, and it is not necessary to determine whether the compensation allowed by the act of 1874 was *greater* than that fixed by the plaintiff's contract.

The plaintiff, in April, 1875, brought his action in this court against the state, to recover $45,962.13, with interest on that sum from May 1, 1860; alleging that this amount was the balance due him, "according to the principles and at the rates and prices mentioned in chapter 323 of the laws of 1874,"

for work done and materials furnished in 1859 and 1860 by him as assignee of a contract for the state printing, etc., entered into between James Ross and the state. The substance of the complaint, and of the legislative acts therein referred to, is stated in the opinion.

The defendant demurred to the complaint on the grounds, 1. That it did not state a cause of action. 2. That it appeared from the face thereof that no action had accrued to the plaintiff by reason of the facts alleged, within six years before the action was commenced.

*A. Scott Sloan*, Attorney General, for the demurrer:

1. The amendment of 1875 (ch. 269) repealed sec. 6 of the act of 1874.* *State v. Ingersoll*, 17 Wis., 631; *Goodno v. Oshkosh*, 31 id., 127. The section was then reënacted, and, speaking from the time of such reënactment, it declares that no sum shall be paid the plaintiff "until the *next* legislature [i. e. the legislature of 1876] shall ratify," etc. This construction is in harmony with the rule that the revision of a statute operates as a repeal of such statute, and with *State v. Andrews*, 20 Tex., 230. The New York cases seem to be in conflict with the decisions of our courts, and are not supported by authority or reason. The evident intention of the legislature was to remit the whole subject to the ratification of a future legislature. The act of 1874 did not intend to fix the

---

* Sec. 6, ch. 323, Laws of 1874, was in these words: "It is hereby expressly declared by this act that no sum shall be paid to the said assignee until the next legislature shall ratify the award or finding, if any, of the same [said?] accountant and commissioners of public printing as herein provided." By ch. 269, Laws of 1875, said section was "amended so as to read as follows:" "It is hereby expressly declared by this act, that no sum shall be paid to the said assignee until the next legislature shall ratify the award or finding, if any, of the same accountant and commissioners of public printing as herein provided. Nothing in this section contained shall be construed to prevent the recovery of what may be found to be justly and equitably due said claimant according to the principles of this act. In case such legislature shall neglect or refuse to ratify the award of such accountant and commissioners, an action thereon may be brought by said claimant to recover the same."

liability of the state. It simply provided for a computation, for the ascertainment of certain facts to enable the legislature thereafter to determine whether the amount should be paid. Although the act speaks of an award and finding, there is no provision that the commissioners should find or award any sum to be due the plaintiff. By sec. 3 they were to report to the next legislature; and by sec. 6 nothing was to be paid unless such legislature should ratify. Now that legislature did not ratify, but evaded the responsibility, and, by a new enactment, provided that the legislature of 1876 may ratify, and that, if it fails to do so, then suit may be brought. The act of 1875 was passed on the 5th of March, within a week of the day previously fixed for the adjournment of that legislature, and after the time in which new business could be introduced. Every member knew that that legislature would not ratify; and if the intention had been to allow the plaintiff to bring suit without a ratification by any legislature, they would have said so in so many words. *Johnson v. Bush*, 3 Barb. Ch., 237–8. The whole action of the legislature of 1875 seems to evince a clear intention to postpone the consideration of plaintiff's claim to a subsequent legislature. The right to sue the state is a matter of favor, in derogation of that immunity which every sovereignty enjoys; and statutes conferring it should not be extended beyond their clear intention. *Rose v. The Governor*, 24 Tex., 496.

*Geo. B. Smith*, for the demurrer, argued, 1. That by the constitution of this state all printing and stationery required for the use of the legislature or of the state are required to be " let by contract to the lowest bidder," and the legislature is forbidden to grant any extra compensation to any contractor with the state. Art. IV, secs. 25, 26. 2. That by the constitution the secretary of state is *ex officio* auditor (art. VI, sec. 2); and as he cannot transfer his duties to any other person (10 Wis., 525), so no act of the legislature can transfer them.

*Wm. F. Vilas*, on the same side, argued that the plaintiff's

case, as stated in the complaint, rests wholly upon the theory that, by the act of 1874, the legislature (1) ratified the settlement alleged to have been proposed by Mr. Harvey, and adopted the estimates of experts made in pursuance thereof, as a valid award so far forth, or (2) itself proposed a like settlement of the claim, which plaintiff has accepted, or (3) that the act, with plaintiff's notice of submission and acceptance therein required, and his bond for costs, constitute a submission to arbitration, by reason of which the amount fixed by the accountant and the commissioners of printing is recoverable *as an award*. The act thus construed is in violation of sec. 26, art. IV of the state constitution, which forbids the legislature to grant extra compensation to any contractor with the state. Such compensation as exceeds that fixed by the contract is extra; and compensation awarded on any other basis of estimation than the contract is also extra the contract. If there is uncertainty in respect to the meaning of the contract, any dispute in respect to the amount to which the contractor is entitled, this raises purely judicial questions. If the legislature should intervene in such a case, it must either construe the contract, and determine the amount due upon it as so construed, or award compensation on some other basis than the contract. But the former of these is judicial duty, and the judicial power is vested by the constitution in the courts. An attempt in that direction by the legislature, although declared in the phrase of enacted law, is a mere offer to pay by one contracting party. Such an offer never binds the courts unless it be accepted, and an accord and satisfaction be made. If, on the other hand, compensation be awarded on some other basis than the contract, it may be fairly assumed that the same result can never be reached that would be reached by a judicial application of the contract. The parties, especially the claimant, would not desire a change in the basis of estimation if it produced no change in the result. Legislative interference, therefore, must give the contractor either

less or more than his contract price. If less, the act is clearly invalid without his consent, as he has always a legal right to recover the contract price; if more, the act is clearly invalid, as granting an extra compensation in every sense of that phrase. Since, then, the change of basis cannot be made without the contractor's consent, it must be assumed that in giving such consent he consulted his own interest, and therefore that the amount awarded him upon the new basis is greater than that fixed by the contract. It may be said that the legislature has presumably consulted the interests of the state. But it cannot lower the compensation; and therefore the interests of the state require the contract price to be adhered to. Again, this presumption will be made by the court from a due regard to its rules in practice and pleading. Any permissible change in the rates of compensation must be by making them less than those fixed in the contract; and this may be done by consent. Such a change must therefore be *defensive*. It is the defense of *accord*, which, to be good, must also aver satisfaction. *Palmer v. Yager*, 20 Wis., 91. For the plaintiff, however, to plead, as the basis of his action, a subsequent contract — to base his action on allegations defensive in their legal nature, — is to invert all the presumptions ordinarily attaching. It puts him to sue on what is naturally ground of defense. It puts the defendant to plead the true cause of action as his ground of defense. If the attorney general should make answer to this complaint that the contract fixed certain rates, and that the amount due plaintiff at those rates was fully paid him before the act of 1874 was passed, then it would appear that that act grants "extra compensation." So if the attorney general should answer that the contract price, although not fully paid, was less than the amount resulting from the new rates provided for in the act, that defense would impeach the act as granting extra compensation. Thus the action would be converted into a trial of the amount due under the contract, and the

court would award no more. Nay, the trial would be simply for determining the constitutionality of the act on which the plaintiff's action is based; and his action would fail when *the true amount due him* was ascertained, unless it appeared that he had *sued for less* than that amount. This would be a palpable inversion not only of the rules of practice, but of the principles of justice. It seems to follow that every attempt of the legislature to alter the rates of compensation to contractors for work done, is void; *prima facie*, at least, it is to give compensation in excess of the contract.

Again, the complaint states facts showing that the act of 1874 grants extra compensation. (1) It shows that the contract rates were in dispute fifteen years ago, and that the dispute was settled, and the parties accorded, and satisfaction was made. (2) It shows that Mr. Harvey, who was then the *auditor* of the state, acting as such, determined that only a certain sum was due plaintiff on the contract, which sum has been fully paid. The decisions of the secretary of state acting as auditor are *quasi-judicial*, and binding until reversed by the courts. *State ex rel. Crawford v. Hastings*, 10 Wis., 525; *Gough v. Dorsey*, 27 id., 119. His decision in this case is therefore decisive, *prima facie*, that the act of 1874 provides for extra compensation. And the act itself does not attack that decision of the auditor as an erroneous decision upon the contract, but seeks to award compensation upon principles entirely different from those of the contract.

Counsel further argued that the act and its acceptance could not be treated as a valid accord, because there was no valid preëxisting claim, and because, under the constitutional provisions already cited, the legislature was at least incapable of entering into any accord except as to the amount *due upon the contract*, and the act does not propose any inquiry into that amount, or any accord upon the contract. The language of DIXON, C. J., in *Hasbrouck v. Milwaukee*, 13 Wis., 50, is

Carpenter vs. The State.

applicable to the power of the legislature to *create* an obligation in such a case as this.

Nor does it better the plaintiff's case that the extra compensation is sought to be granted under the theory of an arbitrament of the controversy. (1) There was no controversy as to the amount due plaintiff on his claim, as there was no valid claim. (2) As the state could not be made liable to the plaintiff except for the amount due him on his contract, the legislature could not submit his claim to arbitration upon terms outside of the contract. (3) All questions arising under the contract are *judicial* questions; and the entire judicial power of this state is vested in the courts mentioned in the constitution. Const., art. VII, sec. 2; *Martin v. Hunter's Lessee*, 1 Wheat., 304, 333-6. In cases of claims against the state, the constitution requires the legislature to direct in what courts suit may be brought. Art. IV, sec. 27. As the legislature cannot compel a private citizen to submit his rights to any arbitrators other than the courts, it would seem to be a reasonable inference that it cannot invest other tribunals with a judicial power for the trial of cases in which all citizens of the state are parties. But, however that may be, it cannot empower such a tribunal, or any court, to proceed to judgment in a particular case upon principles prohibited by the constitution. As it cannot directly grant to a contractor with the state any compensation determined by principles or considerations outside of his contract, it clearly cannot authorize any court or umpire to determine the amount due him upon such principles or considerations, and direct payment of the amount so determined.

Counsel further contended that the act of 1874 did not provide for submitting the plaintiff's claim to an arbitration, or provide for an award that should be binding on the state; that it expressly made payment of the sum ascertained by the printing commissioners upon the principles there stated dependent on a ratification of their finding by the legislature

of 1875; and that there was no such ratification. *U. S. v. Ames*, 1 Wood. & Min., 76; Caldwell on Arb., 61. He further contended that by sec. 6, as amended in 1875, even if it does not contemplate a ratification by the legislature of 1876, the plaintiff is merely authorized to bring suit for what may be "justly and equitably due according to the principles of the act"; that upon the most favorable construction of this language for the plaintiff, it merely authorizes him, in terms, instead of proceeding upon the contract, to sue for *compensation according to the rates* previously fixed by the experts and the commissioners, and does not relieve him from proving to the court the *items of work and materials* for which he claims pay according to those rates; and that, aside from the invalidity of the act, the complaint is bad because it does not give any statement of such work and materials, except by referring to the report of the commissioners, and treating that as an award or stated account. But the true construction of the section is, that it merely waives the defenses of accord and satisfaction, and of the statute of limitations, and permits plaintiff to recover any sum to which he may show himself entitled.

*I. C. Sloan*, for the plaintiff, contended that ch. 323, Laws of 1874, authorized a complete arbitration of the plaintiff's claims upon the equitable basis there described. By sec. 4 he was required to file in the office of the secretary of state a copy of the assignment from his former partner, and also a notice that he accepted the provisions of said act as a just mode of settling his claim against the state, and that he would accept and abide by the *award* that might be rendered in pursuance of the same, whether the sum *to be paid him by such award* be much or little, or nothing at all, as a fair settlement of all claims against the state of any kind, either in law or equity; and he was required to give security that if nothing should be found due him he would pay the expenses and charges of the accountant; all of which he did. This con-

stitutes a complete agreement for an arbitration; and after the award was rendered and submitted to the legislature, the amount of it became due the plaintiff from the state. Sec. 6 of the act had no further effect than the clause frequently inserted in contracts, that no money is to be paid until some superintendent or engineer has certified that the work and materials conform to the requirements of the contract. Any unreasonable refusal of such certificate does not prevent a recovery of the amount due by the terms of the contract. *Thomas v. Fleury*, 26 N. Y., 26. Said section was not intended to affect the validity of the award. It was merely a direction to the state treasurer not to pay until the legislature had approved it. It was intended to subject the award to the inspection of the legislature for the purpose of making it certain that the commissioners had kept within the limits prescribed in the act. If the language had been that the award should not be valid, or that the state should not be liable on it, until it should be ratified by the next legislature, there might perhaps have been some doubt as to its validity, until thus ratified; though even in that case it might be urged that one party to an arbitration cannot thus reserve the option to ratify it if in his favor, and repudiate it if adverse to him. But that question does not arise in this case, because sec. 6 only provided that the money should not be paid unless the next legislature should ratify the award. If it omitted to ratify, plaintiff could bring his action upon the award under Tay. Stats., 1789, § 1; and if the court in that action should be of opinion that the printing commissioners kept within the terms of the submission as prescribed by the act of 1874, plaintiff could recover the amount of the award. But, however it might be held if plaintiff's right rested upon the act of 1874, all doubt has been removed by ch. 269, Laws of 1875. The legislature of the latter year, instead of inspecting the award and determining whether it conformed to the terms of the submission, refer that question, and, as I think, that question

alone, to the court. The provision then added to section 6 declares, first, that it was not the intention of said section to prevent a recovery of the amount justly and equitably due the plaintiff according to the principles of said ch. 323; and second, that in case the legislature did refuse to ratify the award of the commissioners, an action might be brought *thereon,* that is, *on the award,* to recover the amount thereof. The only qualification which construction can make in this language is, that the court might examine the award so far as to determine whether it conformed to the principles of the act. The words "such legislature," as used in the proviso added in 1875, refer to the same legislature mentioned in the section as originally passed. Where a section of a statute is declared to be amended so as to read in a certain way, that portion of it which is merely copied without change is not to be considered repealed and reënacted, but as having been the law from the time of its first enactment; and the new provisions are to be understood as enacted at the time of amendment. *Ely v. Holton,* 15 N. Y., 595; *D. & L. Plankroad Co. v. Allen,* 16 Barb., 15; *Moore v. Mausert,* 5 Lans., 173; *S. C.,* 49 N. Y., 332. A *dictum* in *Goodno v. Oshkosh,* 31 Wis., 127, apparently conflicts with this doctrine; but it was decided by a divided court, and seems to be also in conflict with *Fullerton v. Spring,* 3 Wis., 667. See also *Laude v. C. & N. W. R'y Co.,* 33 Wis., 640.

*T. R. Hudd,* on the same side. [No brief on file.]

RYAN, C. J. Sec. 25, art. IV of the constitution, declares that the legislature shall provide by law that all stationery and printing for the state shall be let by contract to the lowest bidder. And sec. 26 declares that the legislature shall never grant any extra compensation to any public contractor after the contract shall be entered into.

Ch. 114 of 1858 was passed under the former section of the constitution, and provides for letting certain stationery and

printing by contract to the lowest bidder, and for the payment of the contractor accordingly.

Under this statute it appears that the plaintiff's assignor was the lowest bidder at the letting of 1858, and thereupon became contractor for two years for stationery and printing for the state at the stipulated prices of his bid, and that the plaintiff, as his assignee, performed the contract.

It appears that difficulties arose between the plaintiff and the state officers in relation to the plaintiff's compensation under the contract; that in 1860, pending the contract, the secretary of state, with the plaintiff's assent, caused experts to ascertain and report to his office rates of compensation for much of the work and material under the contract, at their actual value, without reference to the prices of the contract; that the secretary and the plaintiff agreed that all work and materials under the contract should be paid for *quantum valebant ;* that a settlement was made between them for all the plaintiff's work and materials under the contract, and that the plaintiff was paid according to the settlement; that subsequently, upon the plaintiff's application, the legislature appropriated (ch. 293 of 1863), and the plaintiff accepted, a further sum certain in full for, and thereupon released the state from, all claim under the contract; but that the plaintiff, not satisfied with any settlement, applied to the legislature, in 1874, for an account of and settlement for all work done and material furnished under the contract.

Thereupon the legislature passed ch. 323 of 1874. This statute recites the facts in a preamble, and provides that, for the purpose of equitably settling the plaintiff's claims, the commissioners of printing shall appoint an expert to compute the actual amount of work done and material furnished under the contract; that thereupon the commissioners shall compute the same at the *quantum valebant* rates reported in 1860 to the secretary of state, as far as those rates apply, and the residue at just and equitable rates to be ascertained by the

commissioners; deduct all payments made on the contract, and report the balance, if any, due to the plaintiff on such computation, to the next legislature, " without regard to the terms or rates of bid on which the said contract was awarded; it being the intention of this act to ascertain the true and exact amount of labor performed and materials furnished under said contract, and to secure to the assignee of said contract just and equitable rates for each and every item of labor or materials,' according to the regular established usages of the trade, as proposed by the secretary in 1860." The report of the commissioners is subsequently called an award, both in the statute itself and in the amendment, ch. 269 of 1875.

The commissioners of printing accordingly made the computation, and reported to the legislature of 1875 a large balance due to the plaintiff. The legislature made no provision for its payment. And this action is brought upon the report of the commissioners, as an award.

The plaintiff's counsel takes the position that the statute of 1874 submits the controversy to arbitration, and makes the report binding as an award upon the state. In our view, it is immaterial whether this is the true construction of the statute, or whether the legislature has power to make such a submission. Doubt of such a power is suggested in *State ex rel. Martin v. Secretary of State*, 38 Wis., 92, not there or here necessary to determine.

For, in any construction of the statute before us, it assumes to compensate the plaintiff for all work and material under his contract, not at the prices of the contract itself, but at prices ascertained *dehors* the contract and by a rule wholly independent of the contract.

Such compensation of a public contractor is prohibited by the constitution. Whether the prices of the contract were high or low, reasonable or unreasonable, the plaintiff has or had a right to recover them against the state; and neither secretary nor legislature could abridge that right. But he had

and has no right to recover for his work and material at different prices, and neither secretary nor legislature could or can, by any agreement or legislation, give him such a right. The exact measure of his right is determined absolutely by his contract, under the constitution; and there exists nowhere a discretion to vary it.

It was contended that the phrase, extra compensation, in the constitution, means additional compensation; that is, compensation added to or greater than that fixed by the contract. And it was urged that we could not hold the compensation of the statute to be within the prohibition, unless it should appear that the *quantum meruit* upon which it proceeds, would come to more in the aggregate than the contract prices. The same might be as well said of any statute releasing any contractor from the prices of his pending contract and substituting a *quantum meruit* or a gross sum for his entire compensation. Such a construction would go far towards surrendering the substantial prohibition for an uncertain shadow. And it seems to involve an absurdity in making the question of construction wait upon an issue of fact. Even in that crippled sense of the prohibition, it strikes us that perhaps it should affirmatively appear in such a statute that it is not an evasion of the prohibition; the presumption otherwise being against any departure from the contract prices. But we do not perceive how even such a construction would aid a statute applying a *quantum meruit* to a contract which the constitution directs to be made only with the lowest bidder, and providing for payment *quantum valebant* of services which the constitution appears to prohibit from being so paid.

But we hold that the word, extra, as used in the constitution, has a much more comprehensive meaning. It is true that the prohibition is to grant; and the latter word seems to favor the narrower construction. Apparently, the apprehension of additional compensation was a primary motive of the prohibition; but as apparently not the sole motive, or some

such word as additional would have been used. Grant, in such use, is altogether too loose and comprehensive a word to operate as a limitation of another. The second clause of the section prohibits the increasing or diminishing of the compensation of officers during their terms of office. The policy of the section as to officers and contractors seems to have been the same; to limit both to the very compensation at which they are employed, and to put that compensation beyond legislative interference. Therefore, as it appears to us, was the word, extra, chosen.

The word is Latin, signifying without, or outside of. In its simple form, it has been but lately admitted into English dictionaries; but its compound use is ancient. Extraordinary gives a familiar instance of its use; signifying outside of the ordinary, not greater or less; for a thing may be extraordinary for greatness, or for littleness, or for neither. So it is of extra compensation, which is also properly a compound phrase. Extra compensation is such, not merely for being greater or less than the contract, but properly because it is outside of the contract. A public contractor might doubtless agree to reduce the compensation of his contract; and the legislature could act on such voluntary reduction. But surely a statute, passed *in invitum*, expressly lessening the compensation fixed by a public contract, would be as plainly within the section as a statute so passed expressly lessening the compensation of a public officer during his term of office. In this sense, the word of the constitution is of old and familiar use in legal terms: extra judicial, extra territorial, extra parochial, extra dotal, *extra feodum, extra viam, extra quatuor maria.* And we believe that this word is used in this sense, in preference to others, in the prohibition, for the very purpose of effectually preventing all legislative tampering with the fixed prices of public contracts.

Legislative history points and sanctions the policy of the constitution. It indicates the purpose of the section to save

Carpenter vs. The State.

the legislature from the importunity of public contractors and servants, and the treasury from the discretion of the legislature in their favor; to limit contractors with the state, beyond pretense and device, to the precise compensation fixed by their contracts. Under this salutary restraint, no misfortune or rapacity can ever avail in a court of justice, by any artifice or circuity, to change the rule of recovery on a contract with the state. Where there is no fraud or mistake which would authorize a court to avoid or reform any contract, the contract itself must govern. If the compensation be too high, the state must bear the loss; if too low, the contractor must suffer it. The constitution leaves no room to legislature or court for equitable considerations of *quantum meruit*. We cannot say that the statute before us is not equitable; but we do hold that it is not constitutional.

And the award of the commissioners, if award it be, founded on *quantum meruit*, without regard to the terms or rates of bid on which the contract was awarded, is absolutely void, and cannot sustain an action.

It was indeed contended by the plaintiff's counsel, that the complaint might be taken as proceeding on the contract. It does not state the contract prices, or go at all upon them. It goes expressly for a *quantum meruit*, under the statute. And it is immaterial to our view whether it be on the contract or on the award.

We cannot properly decide on this demurrer whether the plaintiff may not have some good cause of action under the last clause of the first section of the amendment of 1875. We therefore sustain the demurrer of the attorney general, with leave to the plaintiff to amend his complaint.

*By the Court.* — So ordered.