### Dallas County v. H. F. Lively.

#### No. 2337. Decided May 28, 1914.

**County Judge—Ex Officio Services—Compensation.**

An order of the Commissioners Court fixing the compensation of the county judge for ex-officio services previously performed, no compensation therefor having been before provided (Rev. Stats., art. 3852), was not an allowance of "extra compensation" to an officer after service has been rendered, or a contract has been entered into and performed in whole or in part," such as is

forbidden by article 3, section 53, of the Constitution. This was not "extra compensation"; and the law did not require that his salary for ex-officio services should be fixed before the services were rendered. Mr. Justice Hawkins dissents. (Pp. 366-368.)

Question certified from the Court of Civil Appeals, Fifth District, in an appeal from Dallas County.

*Dwight L. Lewelling* and *Horace Williams,* for appellant.—To fix and pay to a county judge an *ex-officio* salary for ex-officio services rendered during nine months previous to the time of the order fixing said salary and the payment thereof, would be granting to said county judge extra compensation within the meaning of the Constitution of the State of Texas. Constitution of Texas, art. 3, sec. 53, art 3, sec. 44, art. 5, sec. 15; Orr v. Davis, 30 S. W., 50; Collingsworth County v. Meyers, 35 S. W., 416; State v. Moore, 57 Texas, 320; Ferrier v. Knox Co., 33 S. W., 896; Hollman v. Campbell, 57 Texas, 54; 29 Cyc., p. 1423; Shelby County v. Gibson, 18 Texas Civ. App., 121.

A county judge is not entitled to an *ex-officio* salary where same is not provided for by pre-existing law. City of Galveston v. Murphy, 1 Texas App. C. C., 400, 401; Runnels v. Belden, 51 Texas, 51; Grayson County v. May, 19 S. W., 331.

Where a Commissioners Court is permitted to allow a county judge such *ex-officio* salary as it may by order provide, no ex-officio salary can be paid such county judge without such order previously and legally made. City of Galveston v. Murphy, 1 Texas App. C. C., 400, 401; Runnels v. Belden, 51 Texas, 51; Grayson County v. May, 19 S. W., 331; City of Bryan v. Page, 57 Texas, 535.

Where a Commissioners Court has entered an order revoking the *ex-officio* salary of a county judge and denying same until further ordered, such order is legal and binding and has the full force and effect of a judgment while it exists, and a subsequent attempt to pay an *ex-officio* salary during such months as the order remained in force is illegal and contrary to the Constitution. Collingsworth County v. Myers, 35 S. W., 416; Orr v. Davis, 30 S. W., 250.

*Spence, Knight, Baker & Harris,* for appellee.—"Extra compensation," prohibited by the Constitution of Texas, means compensation without authority of law or without the terms of a contract, and does not apply to the compensation allowed the county judge by the Commissioners Court under and by virtue of the plain letter of the law. Const., art. 3, secs. 44, 53, art. 5, sec. 15; Rev. Stats., arts. 2447-2452, 2466; Carpenter v. State, 39 Wis., 282; Swift v. State, 26 Hun., 508; Nichols v. State, 11 Texas Civ. App., 327; Farmer v. Shaw, 93 Texas, 438; State v. McRee (Tenn.), 8 Lea, 26.

MR. CHIEF JUSTICE BROWN delivered the opinion of the court.

The Honorable Court of Civil Appeals of the Fifth Supreme Judicial District has certified to this court the following statement and question:

"Appellant brought this suit against the appellee and the sureties on his official bond to recover the sum of $675, illegally paid him for ex-officio services while serving as county judge of said Dallas County. Appellee recovered and the county appeals.

"On February 24, 1905, appellee, being then judge, the Commissioners Court passed an order allowing, 'until further ordered by the court,' the county judge for ex-officio services the sum of $100 per month.   On June 15, 1905, the order allowing the ex-officio salary was rescinded for the reason, in effect, that the time devoted by him to the affairs of the Commissioners Court did not justify such allowance.   From said time, June 15, 1905, until September 14, 1906, there was no further order or agreement in reference to an allowance for ex-officio services.   On the last above named date, September 14, 1906, there was no further order or agreement in reference to an allowance for ex-officio services. On the last above named date, September 14, 1906, the Commissioners Court passed an order allowing appellee $75 per month for ex-officio services, beginning December 1, 1905, and ending November 30, 1906, and ordered a warrant to be drawn for said amount.   At the time said last order was passed appellee and two commissioners voted for it, and two commissioners voted against it.   A warrant was drawn for said amount of $675, covering nine months of said time, on the county treasurer, and same was paid.

"The Commissioners Court of Dallas County passed the following order, viz:

" 'Upon this the 21st day of September, A. D. 1908, came on to be heard and considered the petition and communication of Dwight L. Lewelling, county attorney, filed herein on September 17, 1908, praying for authority from the Commissioners Court to make Dallas County a party plaintiff in suits against Hiram F. Lively and A. B. Rawlins, to recover ex-officio salaries heretofore paid such officers; also came on for consideration Hiram F. Lively's answer to said communication filed herein on September 19, 1908; and it appearing to the court that Hiram F. Lively performed the ex-officio services faithfully during the said term for which the ex-officio salary was paid; that Dwight L. Lewelling asks authority to sue for; and it further appearing to the court that said services were faithfully rendered and no compensation was given therefor, except the said seventy-five ($75) dollars per month, ex-officio salary; and it further appearing that said salary was fixed by the court and paid in good faith as per order of the Commissioners Court made and entered on September 14, A. D. 1906, and we do hereby ratify and confirm the action of this court taken on the said 14th day of September, 1906, in fixing the said ex-officio salary of said officer.   It is the opinion of this court that there are no merits in equity or justice in the contention of the county attorney as set forth in his said petition; however, it further appearing that Dwight L. Lewelling is the official county attorney of Dallas County and desired authority to test such matter in the courts of this county, it is the desire of this court that he, Dwight L. Lewelling, may have a "free hand" to test the matters complained

of in said petition; it is the further desire of this court that in the matters of ex-officio salary sought to be recovered from Hiram F. Lively or any claim he might have against Dallas County for salary unpaid, that there shall be no "pleas of limitation" filed, but that such contentions be tested upon their merits, that justice may be done; it is (upon the request of Hiram F. Lively) therefore ordered and adjudged by the court that Dwight L. Lewelling, county attorney, do have and is hereby given authority to make Dallas County party plaintiff to the suit heretofore filed by him in the District Court of Dallas County, against Hiram F. Lively, county judge, and individually, and also against A. B. Rawlins, former district clerk of Dallas County.

'W. H. Pippin, Presiding.

" 'It is ordered by the court that the within order be and is hereby made and adopted.

" 'Aye: W. H. Pippin, R. W. Eaton, H. H. Bennett, C. D. Smith, County Judge Lively present not voting.'

"Under the foregoing statement did the Commissioners Court have authority to make the order of September 14, 1906, allowing for ex-officio services for a period already expired? In other words, does such order come within the meaning of article 3, section 53, of the Constitution, which prohibits the granting of 'any compensation, fee or allowance to a public official after service has been rendered?' "

We answer that the Commissioners Court had authority to make the order. Section 53 of article 3 of the Constitution of this State reads: "The Legislature shall have no power to grant, or to authorize any county or municipal authority to grant, any extra compensation, fee or allowance to a public officer, agent, servant or contractor, after service has been rendered, or a contract has been entered into, and performed in whole or in part." By various articles of the statute the fees to be paid to the county judge are specified. But compensation for *ex-officio* service is provided for by article 3852, Revised Statutes, in this language: "For presiding over the Commissioners Court, ordering elections and making returns thereof, hearing and determining civil cases, and transacting all other official business not otherwise provided for, the county judge shall receive such salary from the county treasury as may be allowed him by order of the Commissioners Court." It will be observed that the law does not specify the time when the allowance shall be made before or after the service was rendered.

It is not claimed that there was fraud on the part of the county judge or the court, or that the services rendered were not worth the sum allowed. The sole contention is that the allowance was forbidden by the section of the Constitution copied herein, because the allowance was made after the services were rendered, and it was therefore an *extra allowance* for services rendered.

As before stated, no allowance for this service had been made nor sum paid before the performance of the duties. The construction of the constitutional provision depends upon the meaning of *"extra com-*

*pensation"*: as used in article 3, section 53, of our Constitution which has been construed to mean any sum given in addition to the contract price or salary. We quote: "'Extra compensation is such not merely for being greater or less than the contract, but properly because it is outside the contract.' Carpenter v. State, 39 Wis., 271." Words & Phrases, vol. 3, p. 2624. The writer finds it difficult to argue that *extra compensation* means compensation in addition to that allowed by law or contract. The import of the language is so plain as to preclude argument. If the law had specified the salary to be allowed, or the Commissioners Court had fixed the amount, then any additional compensation procured after services were rendered would be *extra*, and forbidden.

It is manifest that the allowance in this instance was not in addition to a previous allowance. Nothing having been paid, or sum fixed, it could not be extra allowance or compensation. Something can not be added to nothing. If the court had allowed the same sum before the services were rendered, it would have been valid. No time being specified for making it, why should it be held invalid because made after services rendered. The county judge was not upon salary, and no allowance made for other service included this; therefore, the sum fixed by the Commissioners Court could not be extra. It was not in addition to anything paid for other services, but was for services distinct from all other official acts.

If there were a doubt on this question, a reading of chapter 3, title, "Fees of Office—*County Judge*," must clear the mind of such doubt; for the Legislature declares with great particularity what sum that officer shall receive for each official act, except "ex-officio services," which are enumerated and are of such character that the compensation must vary in different counties, therefore it was wisely left to the Commissioners Court of each county. The Constitution does not forbid the fixing of compensation after service rendered, but forbids increasing the agreed or prescribed sum after service rendered or work performed. Had the salary been specified before the ex-officio duties were performed, any additional sum would be extra compensation, which the Constitution forbids.

No authority has been cited which sustains the contention of the county, and we have found none. Justice Hawkins has made a laborious and extensive search into the authorities, but we believe he has found no case which reaches the distinguishing feature of this, that is additional compensation, not for the same service, but for a distinct service, so recognized and characterized in the statute, and therefore clearly not within the scope of the duties covered by other compensation; which failure on the part of our honored associate we consider to be a reliable support to our conclusion.

Mr. Justice HAWKINS, dissenting:

Entertaining, as I do, the profoundest respect for the views and opinions of my associates, it is with great reluctance that I dissent, in any

case; but the far-reaching importance of the foregoing decision and the profound conviction in my own mind that said decision is erroneous, together impel me to do so in this instance.

The facts of this case are set out in the certificate above.

Section 44 of article 3 of the Constitution of Texas is as follows:

"The Legislature shall provide by law for the compensation of all officers, servants, agents and public contractors, not provided for in this Constitution, but shall not grant extra compensation to any officer, agent, servant, or public contractors, after such public service shall have been performed or contract entered into, for the performance of the same; nor grant, by appropriation or otherwise, any amount of money out of the Treasury of the State, to any individual on a claim, real or pretended, when the same shall not have been provided for by pre-existing law; nor employ anyone in the name of the State, unless authorized by pre-existing law."

Section 53 of said article 3, which bears more directly upon the only point in the case at bar, is as follows:

"The Legislature shall have no power to grant, or to authorize any county or municipal authority to grant, any extra compensation, fee or allowance to a public officer, agent, servant or contractor, after service has been rendered, or a contract has been entered into, and performed in whole or in part; nor pay, nor authorize the payment of any claims created against any county or municipality of the State, under any agreement or contract, made without authority of law."

Stripped of such language as plainly has no direct application to the facts of this case, said constitutional provisions would stand thus:

"The Legislature shall provide by law for the compensation of all officers . . . not provided for in this Constitution. . . . The Legislature shall have no power to grant, or to authorize any county . . . authority to grant, any extra compensation, fee or allowance to a public officer . . . after service has been rendered."

That the ex-officio services of the county judge had been rendered by him prior to September 14, 1906, the date of the order of the Commissioners Court making the grant or allowance in his favor, is admitted; indeed, that fact is recited in said order. Said order evidently constituted a "grant" or "compensation," a "grant" of an "allowance" to the county judge, and that much is conceded; but was such compensation or allowance "extra," within the scope and purpose of said section 53? "Aye, there's the rub."

If "extra," in that sense, said grant as to antecedent services was repugnant to said constitutional provisions, and, therefore, void, and said certified question should be answered affirmatively; if not "extra," in that sense, said grant was valid, and said certified question should be answered negatively.

The true meaning of "extra," in its proper setting in the context, may best be ascertained by a study of (a) our Constitution itself, (b)

the general definition and use of the word, and (c) the decisions of the courts upon the point.

Pursuant to the aforesaid constitutional requirement that "The Legislature shall provide by law for the compensation of all officers," our Legislature provided certain compensation for county judges in the form of specific fees for the performance of particular duties, which it imposed upon them. It also imposed upon them certain additional duties for performance of which it did not directly provide additional compensation. However, in further pursuance of said constitutional mandate, it delegated to the Commissioners Court, in Revised Statutes, article 3852, herein below quoted, authority to allow to the county judge additional, or extra, compensation, in the form of salary, covering those ex-officio duties for the performance of which the Legislature itself, by general law. had not specifically provided compensation.

True, such additional, or extra, compensation, when it reaches the county judge, has not been made by the Legislature, directly, as suggested by said section 44; but those two sections of said article 3 should be construed together; and, inasmuch as the mandate in said section 44 to provide by law for compensation of such officers is couched in general terms, and said section 53, by necessary implication, authorizes the Legislature to delegate that power to proper county authority (which includes the Commissioners Court), the constitutionality of said Revised Statutes, article 3852, under which the Commissioners Court acted in making the allowance or grant of additional, or extra, compensation in this instance is not questioned.

The purpose of this inquiry, in that regard, is merely to ascertain and point out the import, meaning and intent of said constitutional provisions, and to develop and emphasize the fact that whatever power or authority there is in the Commissioners Court to make, to the county judge, any grant of additional, or extra, compensation, or any allowance whatever of pay, for official services which have been theretofore imposed upon him by general law, exists, and must be exercised, only by virtue of, and in harmony with the spirit, and not in defiance of the plain letter of said section 53.

Consequently, if the language employed therein will reasonably permit, any statute which attempts to confer upon the Commissioners Court power to grant extra compensation, or an extra allowance, or extra remuneration of any kind, to a county judge should be construed by the courts as embodying said constitutional limitation as to the time of the making of such grant in relation to the time of the rendition by him of services theretofore imposed upon him by general law as part of the burdens of his office; and that rule of construction should prevail· whether any such limitation be expressed in such statute or not; for, without such limitation, either express or implied, such statute would be, manifestly, unconstitutional. There is no difficulty whatever about so construing said article 3852.

Said section 44 deals with the subject of "compensation," and each of said sections 44 and 53 deals with the subject of "extra compensa-

tion," of four classes of persons in their respective relations to public business: public officers, public agents, public servants, and public contractors, whose compensation is not elsewhere provided for in said Constitution.

Said section 44 makes it the duty of the Legislature to provide by law for compensation of each member of each of said classes.

Each of said sections, independently of the other, peremptorily deprives the Legislature of all power whatever to itself grant to any one belonging to any of those four classes such "extra compensation" after the performance of public service, or after the happening of a designated event in connection with a contract for public work.

Said section 53, as if to emphasize that fundamental purpose, repeats the general limitation upon legislative power which is set out in said section 44, and, as if to more certainly make that limitation or inhibition pervade the whole field of extra compensation or additional remuneration for public service and public contract work within this State, adds to "extra compensation" the words "fee or allowance"; although said section 53 apparently seeks to relax, somewhat, the rule as to contractors by adding to the words "contract entered into," the words "and performed in whole or in part." The effect to be given to said addition concerning contractors is a matter which is foreign to the present inquiry, and upon that point no question is raised and no opinion is expressed.

In addition to dealing, as does said section 44, with the direct and original exercise by the Legislature of power to grant "extra compensation, fee or allowance" to persons within any of said four classes, said section 53 introduces a subject which is not embraced by said section 44, and declares a certain sharply defined and clearly stated limitation upon the power of the Legislature to delegate to county and municipal governments power to make such grants. That limitation is set out above, in said section 53; it speaks for itself.

"Compensation" and "extra compensation" of all such persons are treated, throughout both of said sections, as correlative and complementary subjects and terms. The one and only thing which is thus so sweepingly and so strenuously inhibited to the Legislature, and through it, to county and municipal governments, is, in general terms, the grant of extra compensation under certain specified conditions involving a time element, said conditions being defined, with slight variation as to "contracts," in both of said sections 44 and 53.

For illustration: Once let such contractor complete, and, if section 53, alone, is to control on that point, let him but begin work under his contract, or, indeed, if section 44, alone, is to control on that point, let him but enter into such contract, it thereupon becomes too late for the Legislature or the county or municipal government, as the case may be, to grant or allow him extra compensation of any character, or in any amount, for work embraced by such contract. What sort of compensation to the contractor is thus inhibited? The answer is obvious: Compensation in addition to, or extra of, that which the contract provided for work which it required of him. The reasons for such inhibition are

patent.  So it is with regard to every such officer, agent or servant; the inhibition there being against the grant to him of "extra compensation, fee or allowance" after the rendition by him of public service. What sort of compensation to such officer, agent or servant is thus inhibited?  Here, also, the answer is obvious:  Compensation in addition to or extra of, that which the law, as it existed when the service was rendered, provided for service which it required of him—compensation in addition to, or extra of, that to which he became entitled upon performance of such service, by virtue of an existing statute constituting a direct grant by the Legislature, or by virtue of a previous order of the county or municipal authority, constituting a grant or allowance under said delegated authority of the Legislature to provide for the compensation of all members of any of said four classes.  Here, again, the reasons for such inhibition are apparent.

In each of these instances, indeed in every instance which can possibly arise under said constitutional provisions concerning extra compensation, whether relating to a member of one or another of said four classes, the inhibition is against the grant of such extra compensation, fee or allowance after the happening of such designated event, and against that only.

But, prior to the happening of such event, the compensation or allowance of such contractor for such work, or the compensation, fee or allowance of such officer, servant or agent for such service, may be increased in either of the two ways which are indicated by said constitutional provisions, first, by direct action of the Legislature (sec. 44) or, in local matters; secondly, by action of the county or municipal authority, in the exercise of such delegated power (sec. 53).

Alike, under said section 44 and under said section 53, said inhibition is leveled, not at the grant of compensation, which is permissible, nor yet at the grant of "extra compensation, fee or allowance," which is likewise permissible, but solely and alone at the grant of "extra compensation, fee or allowance," if, and when, made after rendition of such public service, or after the entire or partial performance, or, possibly, after the making, of the contract for such work.

In each of said sections 44 and 53, so far as this case goes, said time element, as to the grant of compensation, fee or allowance, is the subject, and the only subject, of our Constitution's zealous solicitude.  Consequently, if such time element be treated as immaterial, the only purpose of said constitutional limitations is thereby absolutely nullified.

Considered separately or together, the cardinal purpose of said sections 44 and 53, in so far as this inquiry is concerned, was dual in its nature; first to stamp the emphatic disapproval of the people of this State upon the whole idea of granting, or creating or conferring, originally, any right to any compensation or pay, or remuneration of any kind, class or character whatsoever, after the rendition of such public service in the case of such officer, agent or servant, or after the performance, in whole or in part, or, possibly, even after the making of such contract, in the case of such contractor, and, secondly, to firmly

embody, in the organic law of the land, such clear and unambiguous language as would inevitably and permanently prevent the Legislature from doing that thing, and from authorizing any county or municipal government to do it. The evident object and purpose was to absolutely extirpate that whole evil in Texas.

All the provisions of said sections 44 and 53 and of other portions of our State Constitution fixing, in advance, the salaries of certain officers, and the general policy indicated in that document as a whole, harmonize with and support the views which are herein expressed as to the meaning of "extra compensation, fee or allowance."

An important feature of this case is the fact that all ex-officio duties of county officers must be performed by them, whether specific compensation be provided therefor or not. Hallman v. Campbell, 57 Texas, 54; Edwards v. McLean, 23 Pa. Sup. Ct. Rep., 43; State of Ohio v. Williams, Auditor of State, 34 Ohio St., 218; State of Washington v. Cheetham, State Auditor, 21 Wash., 437, 58 Pac., 771; 29 Cyc., p. 1423, note 31. The effect of those cases is hereinafter more fully shown.

Consequently, the ex-officio services of the county judge covered by said order of September 14, 1906, making said grant or allowance of salary of $75 per month for one year beginning December 1, 1905, were only such as he was required by pre-existing law and decision, and his oath of office, to perform, as part of the burdens of his office—services, which (excepting those involving exercise of discretion) he could have been compelled by mandamus to perform, regardless of the fact that no compensation specifically therefor had then been provided by the Legislature or under its delegated authority. And that would have been true even had the Commissioners Court passed, prior to the rendition by the county judge of said services, an order expressly refusing to grant or pay or allow him any salary therefor.

In the Hallman case, supra, in holding that it was the duty of the district clerk to issue copies of the citation, although there was then no provision of law under which he could get compensation for that service, this court said: "Under the statute, the issuance without fee of copies of the original citation is one of the burdens devolving upon district clerks as an incident to their office, the relief for which, if any, must be had through the legislative and not the judicial department." That decision evidently proceeded upon the theory that the compensation provided by law for the district clerk, in the form of fees, extended to and paid for the performance by him of ex-officio services, and that, inasmuch as the Legislature had made no direct grant of other, or additional, or extra compensation for the performance of the duties of that office, and had not delegated its power to do so, district clerks could look to the Legislature alone for relief—and to it they went, and not in vain.

True, just there, analogy between that case and this breaks down, in that, in this case, the Legislature has delegated to the Commissioners Court power to grant extra compensation, in the form of salary, to the county judge for ex-officio services.

Revised Statutes, 1911, article 3852, is as follows: "For presiding over the Commissioners Court, ordering elections and making returns thereof, hearing and determining civil causes, and transacting all other official business not otherwise provided for, the county judge shall receive such salary from the county treasury as may be allowed him by order of the Commissioners Court." However, that grant of power to the Commissioners Court, without which it was powerless to act in the premises (Const. of Texas, art. 5, sec. 18), is, perforce of said constitutional provisions, with the proviso and upon the condition, that such power be exercised, if at all, before, and not after, rendition by the county judge of the ex-officio services to be covered by such other, or additional, or "extra" salary or "compensation."

Correlatively, that right of the Commissioners Court to grant extra compensation in the form of salary to the county judge for ex-officio services is a permissive right only; it creates no legal obligation upon which the county judge could, by mandamus, compel the Commissioners Court or its members to make an allowance in any particular amount, or in any amount, or upon which he could maintain a suit against the county; the whole matter is left to the discretion of that court. Orr v. Davis, 9 Texas Civ. App., 628, 30 S. W., 249.; Collingsworth County v. Myers, 35 S. W., 414; State v. McKee (Tenn.), 8 Lea, 24.

"Extra" is defined thus: "Beyond, or greater than, what is due, usual, expected, or necessary; additional; supernumerary; as extra pay or work.. Something in addition to what is due, expected or customary, . . . an added charge or fee." Webster's New International Dictionary. "More than what is usual, or than what is due, appointed or expected; supplementary; additional." Century Dictionary. "Being over and above what is required, due, expected or usual; extraordinary; additional; supplementary." New Standard Dictionary.

In common parlance, we say of a laborer, employed by a city, he gets a certain amount, say, $1.75 per day of eight hours, and "extra compensation" of a certain amount, say twenty-five cents per hour, for overtime. Of a teacher in a public school in a district, which levies a local tax for school purposes, we say, or used to say, that for his services in teaching the entire school, including pupils within and pupils without the scholastic age, he receives a regular salary of $75 per month, and, as "extra compensation," he receives all the tuition from the "overs and unders," pupils not within "scholastic age." Suppose the statute were to provide that instead of being paid as theretofore he should thereafter receive a salary of $75 per month but "no extra compensation or allowance"; would anyone contend that it was still lawful to allow and pay him the tuition from the "overs and unders" in addition to the $75 salary? But, if the law, as amended, should go further and authorize the board of trustees to allow such teacher in addition to said salary of $75 extra compensation not exceeding the amount of tuition to be derived from the "overs and unders," provided same be allowed by said board before the beginning of the scholastic term, but not afterward, could it be reasonably denied that the purpose and effect of the amended

statute was to permit the board to grant or allow to such teacher such extra compensation if it be done seasonably, but, otherwise, to forbid it?

In my opinion "extra compensation, fee or allowance," as used in said section 53 of article 3 of the Constitution of Texas, clearly means "compensation, fee or allowance" extra of, or in excess of, or in addition to, the particular amount of compensation, fee or allowance which such public officer, agent, servant or contractor had a legal right to demand under the status which existed prior to the grant in question. In a sense it includes any change in compensation. Carpenter v. State, 39 Wis., 271. As applied to the facts of the case at bar "extra compensation, fee or allowance" means, simply, compensation, fee or allowance extra of, in excess of, or in addition to, such compensation, in fees or otherwise, as the county judge had a legal right to demand prior to the adoption by the Commissioners Court of the above mentioned order of date September 14, 1906.

Now, to what compensation or fees was the county judge, at that time, entitled for performance of all of the duties of his office, including ex-officio services? What did he then have a legal right to demand? Only, as we have seen, the fees fixed directly, by the Legislature, by general statute, and aggregating, let us assume for purposes of illustration, $4000. That certainly constituted what said section 44 calls "compensation," which the Legislature was therein directed to provide. Said salary of $75 per month, mentioned in said order of September 14, 1906, was, also, certainly "compensation . . . allowance" to him for "public service"; and, as related to said aggregate amount which had been so directly granted to him by the Legislature for "public service," which aggregate our Constitution evidently makes the base of calculation or estimate in such matters, was, beyond room for doubt, "extra," and, therefore, such as said Constitution so sternly declares shall not be granted after service rendered.

The meaning of "extra compensation" in such constitutional provisions is well developed in harmony with the views herein expressed, in decisions of various courts. The point here involved is a simple one, as applied to contractors, but is sometimes more difficult as applied to officers, agents and servants.

Shelby County v. Gibson, 18 Texas Civ. App., 121, 44 S. W., 302, decided by the San Antonio Court of Civil Appeals, in which this court denied a writ of error, involved circumstances which were held to establish the fact that the contractor, and not the county, was responsible for his having to tear down certain defective brick work in the construction of the courthouse, under contract. The allowance which the Commissioners Court made him therefor, in excess of the contract price, was "extra compensation" within the meaning of, and was prohibited by said section 53 of article 3 of our State Constitution. That was held void because it was "extra" of the amount which the contractor might legally demand under the previous status. See, also, Nichols v. State, 11 Texas Civ. App., 327, 32 S. W., 452; and State of Texas v. Haldeman, 163 S. W., 1020, recently decided, both by the Austin Court of

Civil Appeals, in which this court denied a writ of error, and Swift v. State of New York, 26 Hun., 510.

Farmer v. Shaw, 93 Texas, 445, 55 S. W., 1117, and the case at bar both arose under the very same statute, Revised Statutes, art. 3852 (2450), (2386), supra. That case, as does this, involved a grant, by a Commissioners Court, of extra compensation to a county judge for ex-officio services. In construing said statute in connection with another which allowed certain fees to the county judge, for the purpose of determining, not *when,* but *hôw much* "extra compensation" that court might legally allow the county judge for ex-officio services, this court, through then Chief Justice Gaines, said: "It was to be presumed that in making that allowance, under the new law, the Commissioners Court would take into consideration the amount allowed by statute and would scale his salary accordingly." A similar rule should be applied in determining, in this case, what is "compensation," as a preliminary step in ascertaining not *how much,* but *when,* such "extra compensation" may legally be allowed; which is to say that, in answering said certified question, "extra compensation" should be construed and held to relate and refer back, as to and for an antecedent, to the aggregate of "compensation" to which this county judge was entitled, for official services, under the status which existed down to the adoption of said order of September 14, 1906.

Edwards. v. McLean, supra, arose under section 11 of article 3 of the Constitution of Pennsylvania, which provided: "No bill shall be passed giving any extra compensation to any public officer, servant, employee, agent or contractor, after services shall have been rendered or contract made, nor providing for the payment of any claim against the commonwealth without previous authority of law."

The services of the constable, for which he claimed extra compensation, were rendered before the passage of two statutes which, upon their faces, provided for payment of such services. The syllabus of the case states that the court held that said statutes "are unconstitutional as violative of article 3, section 11 of the Constitution, which forbids legislation giving any extra compensation to public officers after services have been rendered."

The following is from the opinion in that case:

"The appellant had, as appears from the averments of his petition, already served a term as constable of the Ninth Ward of the City of Wilkes-Barre when he accepted the office for the term during which he rendered the services for which he in this proceeding seeks to obtain compensation; he was therefore by the provisions of section 111 of the Act of April 15, 1834, P. L., 537, left perfectly free to accept or decline the office. When he accepted he is presumed to have known the nature and duties of the office and the compensation which thereto appertained. Among the duties which he was required by law to perform was that of attending at all elections held in his ward, and making certain returns to the court of quarter sessions. Act of July 2, 1839, P. L., 519, and Act of May 13, 1887, P. L., 108. He took the office subject to

these burdens. The compensation which the officer was entitled to receive for the discharge of his official duties was regulated by the Act of May 23, 1893, P. L., 117. Fenner v. Luzerne County, 167 Pa., 632, 31 Atl., 862. That statute provided compensation for the discharge of his official duties by the allowance of fees for many of such services, but no special compensation was allowed for making returns to the court of quarter sessions or being present at elections. This was the state of the law when the services for which the appellant now seeks to recover were performed. The appellant performed all the duties of his office, receiving such compensation as was at that time authorized by law, and now bases his assertion of a right to recover additional compensation, in the nature of special fees not allowable at the time the services were rendered, under the provisions of the Acts of June 15, 1897, P. L., 165, and July 2, 1901, P. L., 609. Those statutes are exclusively retrospective in their provisions, each of them provides for the payment of constables for services rendered prior to their enactment, and neither of them makes any attempt to regulate the fees to be paid in the future. Legislation of this character is in violation of article 3, section 11, of the Constitution," quoting it, as above. "The provisions of this section are broad enough to cover all public services rendered by any public officer which, under the law at the time he accepts office, it becomes his duty to perform. This section relates only to an increase of compensation after the services required by law have been rendered, and is not to be confused with section 13 of the same article, which relates to an increase of compensation for services to be rendered in the future."

It will be observed that the services of the constable in the Pennsylvania case were of similar character to those of the county judge in this case, and that the legal status under which the services in that case and this arose were exactly similar to the extent that, in both instances they were required by law, when rendered, although the compensation of the officer, in the form of specific fees, fixed by statute, included none for those particular services.

It is also true that in the Pennsylvania case the grant or allowance was made directly by the Legislature, while in this case it was made by the Commissioners Court under authority conferred by the Legislature, but that difference is immaterial here, because our Constitution includes both of those bodies in the inhibition against the granting of "extra compensation, fees or allowance" after the rendition of services.

It is also true that under the Constitution and laws of Texas the authority of the Commissioners Court to make such allowance to the county judge in advance of the rendition of the services in question, was undeniable; but it is likewise undeniable that the Pennsylvania Legislature also had unquestionable authority to provide such additional compensation to the constable, only, however, in advance of the rendition by him of such services. The cases are alike upon the essential point in each case, which is that the clear authority to grant the extra compensation in question was not exercised before the service was rendered, a

failure which was fatal in the cited case, and which, for the same reason, is fatal here.

The Pennsylvania decision could not have been based upon the theory that the services of the constable which formed the basis of his claim were "without previous authority of law," for, as we have seen, the court, in rendering that decision, expressly declared that said services were rendered in performance of "duties which he was required by law to perform," and that he knew that fact when he accepted his office, and that he took it "subject to these burdens."

United States v. North, 112 U. S., 510, arose under an Act of Congress of July 19, 1848, chapter 104, section 5, Stat., 248, which, in general terms, provided, "That the officers, non-commissioned officers, musicians, and privates engaged in the military service of the United States in the war with Mexico, and who had served out the time of their engagement, or may have been honorably discharged, . . . shall be entitled to receive three months' extra pay," etc. Mr. Chief Justice Waite, speaking for that court, said: "The pay they were to receive was evidently that which they were receiving at the end of their engagement, or when they were honorably discharged. The language is, 'shall be entitled to receive three months' extra pay,' evidently meaning the same pay they would have received if they had remained in the same service three months longer. It follows that, as North was serving at sea when he was ordered away, he was entitled to three months' sea pay, and as Emory was mustered out of his service in the war as lieutenant colonel of volunteers, his pay must be in accordance with that rank."

In Ohio v. Williams, supra, two subordinate officers of the Senate sought, by mandamus, to compel the auditor to issue warrants for additional compensation which had been granted them for, and after rendition by them of, public services, for which services the general and pre-existing statutes of Ohio provided a fixed per diem.

One of the contentions of the auditor, in support of his refusal to issue such warrants, was that because the grant of such additional compensation was made after service rendered it was violative of the following provision of section 29 of article 2 of the Constitution of that State: "No extra compensation shall be made to any officer, public agent, or contractor, after the service shall have been rendered or the contract entered into," etc.

That contention of the auditor was upheld by the Supreme Court of Ohio in an opinion in which, after quoting said section 29 in full, and after specifically referring to that portion thereof which is set out above, that court said: "This language is very broad, and was intended to embrace all persons who may have rendered services for the public in any capacity whatever, in pursuance of law, and in which the compensation for the services rendered is fixed by law, as well as persons who have performed or agreed to perform services in which the public is interested, in pursuance of contracts that may have been entered into in pursuance of law, and in which the price or consideration to be re-

ceived by the contractor for the thing done, or to be done, is fixed by the terms of the contract. ·

"In the first, compensation, in addition to that fixed by law at the time the services · were rendered, and, in the second, the allowance of compensation in addition to that stipulated in the contract, is inhibited by the first clause of the section."

Upon the point involved, the language of the Ohio Constitution and of the Texas Constitution is practically identical. Yet that court directly, clearly, emphatically and unanimously held that such additional allowance to the relators was "extra compensation" and, that as a corollary, it was within the constitutional inhibition, because it was in addition to that fixed by law at the time the services were rendered.

Said Ohio decision is diametrically opposed to the decision of the majority in this case, but in absolute harmony with the views expressed herein.

Effort may be made to distinguish the two cases in principle, under the facts, in that, in our case, under said Revised Statutes, article 3852, the Commissioners Court had power to allow to the county judge additional compensation; but such effort must fail, because that power was not exercised *until after the services had been rendered.* It was then too late to exercise it, because the Constitution forbade it, then. So it was in said Ohio case; the authority of the Legislature to increase the compensation of said officers prior to rendition of the services in question, was unquestionable, as was the authority of the Commissioners Court, in this Texas case. After service rendered, neither longer had authority to make such grant or allowance because it was "extra compensation," the granting of which, at that juncture, was expressly forbidden by each Constitution. The analogy between the two cases, upon the issue, is complete.

Another case of like nature and like result, in part, is, State of Washington v. Cheetham, supra, in which employees of the Senate demanded warrants for compensation which the Senate, by resolutions, had allowed them for and subsequent to the rendition of the services, extra of the per diem which had been previously allowed for their compensation as such employees. The resolution as to Delbridge and Miller recited performance by them of services in addition to those covered by the terms of their original employment, and as to them, a writ of mandamus was properly allowed. But the resolution as to the others recited that they had been compelled to work on an average of fourteen hours per day, and directed "that said clerks be allowed compensation for one-fourth time extra in consideration of said extra work." In their cases refusal of the auditor to issue warrants was based on section 25, article 2, of the State of Washington, as follows: "The Legislature shall never grant any extra compensation to any public officer, agent, servant or contractor after the services shall have been rendered or the contract entered into, nor shall the compensation of any public officer be increased or diminished during his term of office."

Said relators contended that ten hours was a reasonable and customary

day for such work, wherefore additional pay for the other four hours was not inhibited. But the court declared: "The history of legislative bodies is to the effect that no regular hours of service are rendered either by members of the Legislature themselves or by their servants. They may sit, two, four, six, or twelve hours a day, or all night, if they see fit; and it frequently occurs that, during a great many days of the session no service is rendered, either by the members or by the employees," and that the duty of said relators was to perform the services whenever they were required. The court further said: "He entered into a contract with the State, and extra compensation has now been voted him for services which had already been rendered. There is no doubt of the power of the Legislature to have, at any time they determined that the officer was not sufficiently paid, increased his per diem; but that is a different proposition from the one involved here, where the compensation was added after the services had been performed." So, as to those relators, the writ was denied.

Porter v. Fletcher (N. Y.), 153 App. Div., 472, 138 N. Y. Supp., 559, a late case, arose under section 28 of article 3 of the Constitution of New York, which reads thus: "The Legislature shall not, nor shall the common council of any city, nor any board of supervisors, grant any extra compensation to any public officer, servant, agent or contractor." In construing that section the Supreme Court of that State said: "The evil sought to be remedied by this constitutional provision seems to be an increase of compensation for services theretofore rendered." It will be observed that the quoted language, upon which that opinion rests, does not expressly designate a time after which such extra grant shall not be made, yet it was there construed to mean, as to public officer, just what our Constitution expressly declares, viz., that grant of extra compensation can not be made after service rendered. Under both Constitutions the time element is the important feature of the inhibition. Matter of Mahon v. Board of Education, 171 N. Y., 263, 63 N. E., 1107, 89 Am. St., 810, is cited by the Supreme Court of New York in support of its decision in Porter v. Fletcher, and from it the following excerpt is taken: "The claim of the relator falls in direct terms within the restrictions of section 28 of article 3. The relator was a public servant or employee of the city, and the Legislature has sought to grant her extra compensation. The argument of her counsel only emphasizes the conflict between the statute and the Constitution. He contends: 'The Act of 1900 is as though the State said to the wornout and decrepit teachers, "You have not been paid enough for your services, and we will now pay you what you deserve."' It is exactly such action on the part of the Legislature that the constitutional amendment was intended to prevent. Extra compensation is compensation over and above that fixed by contract or by law when the services were rendered." In view of the fact that in the case at bar the salary of the county judge for ex-officio services had not been "fixed by law"—by either the Legislature or the Commissioners Court—when the services in question were rendered, can it be doubted that our case comes within the rule of con-

struction thus announced by the present Chief Justice of the court of last resort in New York?

None of the authorities cited in the brief of appellees contravenes or questions the views and conclusions herein expressed; probably none which does so can be found. In so far as they are applicable, nearly all of those authorities support those views and conclusions and some of them are cited herein.

Concerning certain features of the foregoing majority opinion the following is respectfully submitted:

(a) It holds that "extra compensation," as used in said section 53, means "any sum in addition to the contract price or salary," and exists "because it is outside the contract." That is all sound and true, in cases of contract; but what if, as in the case at bar, there is no contract price or salary to form such base of calculation? As applied to the county judge, compensation of any kind is "extra" if "outside of" and in addition to his statutory compensation.

(b) It says, "it is manifest that the allowance in this instance was not in addition to a previous allowance." True; but it was in addition to his statutory fees.

(c) It says, "nothing having been paid or sum fixed, it could not be 'extra allowance or compensation.'" The answer is: Something had been paid—or was owing—a sum had been fixed by the Legislature, to-wit, his statutory fees of office, as to which the salary subsequently allowed him was "extra compensation." The very mental conception of "extra compensation" presumes antecedent "compensation," which, in this instance, was fixed by statute, and not by contract.

(d) Referring to the grant in question it asks: "No time being specified for making it, why should it be held invalid because made after service rendered?" The sufficient answer is, a time is specified; our Constitution plainly declares such grant shall not be made "after service rendered."

(e) It declares, "the county judge was not upon salary and no allowance made for other services included this, therefore the sum fixed by the Commissioners Court could not be extra."

The first suggestion therein appears to be that a "salary" may constitute "compensation" for official services, but that statutory fees for the same services although aggregating, possibly, as much as a liberal salary, may not. That suggestion seems to lack merit, because, although the county judge's statutory compensation reaches him as "fees" and not as "salary," it is all "compensation," and his obligation to perform all duties imposed upon him by law, including *ex-officio* duties, exists just the same. A change in the policy and laws of the State, from the fee system to a salary basis, could not affect the question. Our Constitution employs the general term "compensation"—not "salary,"—in fixing the base, or antecedent, to which "extra compensation" necessarily relates or refers.

The second suggestion in this quoted language seems to be that, inasmuch as the regular fees which are allowed the county judge by

statute are, specifically, for services other than *ex-officio*, such fees do not constitute "compensation" for ex-officio services; and, therefore, such compensation as may be granted for *ex-officio* services is merely "compensation," and not "extra compensation," in relation to that particular service and, as a final consequence, the grant, or allowance of salary specifically for *ex-officio* services is not a grant of "extra compensation" within the meaning of said constitutional provisions.

The major premise in the logic of the majority opinion seems to be that "extra compensation" necessarily means compensation in addition to that formerly provided, specifically, for the particular service, or work—even *ex-officio* services—and that idea apparently forms the backbone of said majority opinion.

The foregoing analysis and study of said constitutional provisions was undertaken and is here respectfully presented for the primary purpose of reaching the very right of the matter involved, but with the purpose and hope of locating and pointing out the error which lurks and lingers in that major premise. The idea which vitalizes it appears to have resulted from drawing a very fine bead on said constitutional provisions—entirely too fine, it seems to me, to form a proper rule for construing an instrument of that fundamental character which was written in the ordinary language of the plain people with the expectation that it would be construed accordingly, and with a view to the effective accomplishment of practical results.

It was at *back* allowances, rather than *double* or *increased* allowances, that the framers of our Constitution and the people struck; and in the case at bar the grant of salary for antecedent services, while made, doubtless, in the utmost good faith, was, nevertheless, in the very teeth of said constitutional inhibition.

To summarize:

It seems clear that the natural and obvious purpose and necessary effect of the above quoted provisions of the Constitution of Texas was to require that the amount of all extra compensation, fees and allowances moving to any member of any of said four classes, shall be determined, and the grant thereof made, in advance of the rendition of public service or in advance of the performance of contract work and, as a corollary, to inhibit the Commissioners Court from making to the county judge any allowance for services previously rendered.

All authority of the Commissioners Court for making any grant of compensation, or salary, to a county judge rests upon some delegation, by the Legislature, of power to do so.

No statute, other than said article 3852, attempts to authorize that court to grant compensation, fee or allowance, to a county judge for *ex-officio* services.

Consequently, the rights of the county judge, in this case, are measured by that statute.

If said article 3852 be construed as not authorizing said grant, or allowance, of salary to said county judge for antecedent *ex-officio* services, said grant, upon which, alone, he relies in this case, was void and

inoperative as to such antecedent services, although valid as to subsequent services.

On the other hand if said article 3852 be construed as authorizing the Commissioners Court to make, after rendition of *ex-officio* services, a grant of compensation, or salary, to said county judge therefor, said statute is, itself, thereby rendered unconstitutional and void, and, as a corollary, said grant thereunder was wholly void. So in no event should said grant or allowance of salary, of date September 14, 1906, be upheld, as to such antecedent services; although, as to such future services, it was valid

The subsequent order of ratification could not impart validity to an unconstitutional and void act.

I think that Dallas County is entitled to recover, in this action, and that an affirmative reply should be made to the certified question.