The County of Ulster, Respondent, *v.* The State of New York, Appellant.

1. Counties — Liability of the State to Refund Moneys Derived from Taxes on Railroads in Towns Bonded for Their Construction, Paid by Counties as Part of Their State Tax — L. 1869, Ch. 907; 1871, Ch. 283; Enabling Act, L. 1899, Ch. 336.   A county which, as a part of its state tax, has paid into the state treasury moneys derived from taxes levied upon railroads in towns which aided in their construction through the issue of bonds, which moneys were, by section 4 of chapter 907 of the Laws of 1869, as amended by chapter 283 of the Laws of 1871, directed to be devoted to the establishment of a sinking fund to be used in the redemption and cancellation of such bonds, may recover the amount thereof from the state upon the due presentation and proof of its claim under chapter 336 of the Laws of 1899, authorizing the State Court of Claims to hear and determine such claims; the liability of the state to refund the moneys illegally received being precisely identical with that of the county to refund them to the towns.

2. Repeal or Modification of General Tax Laws Pro Tanto. The fact that the whole amount paid in by the county was no more than that required by the General Tax Laws does not entitle the state to retain such moneys, for the reason that the special act of 1869 as amended required them to be devoted to a specific purpose, and the General Tax Laws must be deemed to have been repealed or modified to that extent.

3. Repayment Cannot Create Deficiency in State Revenues. Assuming that the allowance of claims of this character would create a deficiency in the revenues of the state, that fact would not prevent a recovery of the moneys which have been diverted from the use commanded by the statute; there can, however, be no such thing as a legal deficiency since the state is not limited to the imposition of a tax exactly equal to its annual expenditures or obligations.

4. Repayment Will Not Result in Unequal Burdens. The contention that, in the imposition of an additional general tax to supply the deficiency, other portions of the state will be compelled to bear part of the burdens that really belong to the county, cannot be sustained, because if the moneys which should have been applied to the purpose directed by the statute had not been paid into the state treasury, the other portions of the state would have borne no new or additional burdens.

5. The County the Proper Claimant. The county being liable to the towns for the moneys thus illegally diverted is the proper party to present the claim and the enabling act so provides.

*County of Ulster* v. *State of New York,* 79 App. Div. 277, affirmed.

(Argued December 3, 1903; decided January 12, 1904.)

Appeal from an order of the Appellate Division of the Supreme Court in the third judicial department, entered January 14, 1903, which reversed a judgment of the Court of Claims dismissing plaintiff's claim and granted a new trial.

Under various statutes a number of the towns in Ulster county issued bonds to aid in the construction of certain railroads running through them.

In 1869 the legislature passed an act (Chap. 907, sec. 4) providing that "All taxes except school and road taxes, collected for the next thirty years, or so much thereof as may be necessary, in any town, village or city, on the assessed valuation of any railroad in said town, village or city, for which said town, village or city has issued or shall issue bonds to aid in the construction of said railroad, shall be paid over to the treasurer of the county in which said town, village or city lies, and said money so paid over, including interest collected on bonds held by said treasurer as a sinking fund, shall be invested by said treasurer in state, city, town, county or village bonds, issued pursuant to law of this state on United States bonds, within sixty days after receiving the same, and shall be held by said county treasurer as a sinking fund for the redemption and

payment of the bonds issued or to be issued by said town, village or city, to aid in the construction of said railroad."

This act was amended in 1871 (Chap. 283) so as to permit the purchase of such railroad bonds with moneys arising from the taxes levied upon such railroads. The amended act further provided for the cancellation of the bonds so purchased, and for other things not material to the present inquiry.

For many years after the passage of these acts no attempt was made to carry out their provisions in Ulster county or the bonded towns thereof. In 1888 the bonded towns commenced proceedings to compel the treasurer of Ulster county to set aside the state and county taxes levied upon such railroads for the purposes specified in the statutes of 1869 and 1871. Considerable litigation ensued between the bonded towns and the county, which resulted in the establishment of the right of the former to recover of the latter all state and county taxes not devoted to the purposes of the sinking fund provided for in said acts. Some of the claims thus created have been paid, while others are yet to be paid.

In various years and from the moneys arising from taxes levied upon and collected from railroads which had been assisted by the issuance of bonds by the towns of Ulster county, the treasurer of that county paid into the state treasury, in the form of state taxes, the sum of $42,451.87.

In 1899 the legislature passed an act (Chap. 336) to confer jurisdiction upon the State Court of Claims to hear, audit and determine the alleged claims of the several counties containing towns, villages and cities bonded to aid in the construction of railroads, etc., on account of the payment to the state of the state taxes collected from such railroads, etc. By the first section of this act jurisdiction to hear, audit and determine such claims is conferred upon the Court of Claims, with power to award judgments without interest. The second section directs the disposition of the moneys paid under any such judgment. The third section provides that awards shall be made and judgments rendered only when the facts proved shall make out a case against the state, which would create a

liability were the same established in a court of law or equity against an individual, corporation or municipality. It further provides that the lapse of time shall not affect such claims, if filed within one year after the passage of the act. Under this act the present action was brought with the result above stated.

*John Cunneen, Attorney-General,* for appellant. The Appellate Division erred in holding that the state received more money from Ulster county than it was entitled to receive. (*Strough* v. *Bd. Suprs.,* 119 N. Y. 218 ; *Mayor, etc.,* v. *Davenport,* 92 N. Y. 604.) The court below erred in assuming : (1) That any part of the money collected from these railroad valuations reached the state treasury ; and (2) in assuming that if it did the county could recover it back. (*Kilbourne* v. *Bd. Suprs.,* 137 N. Y. 170.)

*John J. Linson* for respondent. The taxes (other than school and road taxes) collected for thirty years after and including 1869, in any town, on the assessed valuation of any railroad therein, to aid in the construction of which railroad such town had issued bonds, belonged to such town up to the amount necessary to pay principal or interest of any such outstanding bond or bonds issued in renewal of or to refund the same. (L. 1869, ch. 907, § 4 ; L. 1871, ch. 283 ; *Clark* v. *Sheldon,* 106 N. Y. 104 ; *Strough* v. *Bd. of Suprs.,* 119 N. Y. 212 ; *Crowninshield* v. *Bd. of Suprs.,* 124 N. Y. 583 ; *Clark* v. *Sheldon,* 134 N. Y. 333 ; *Barnum* v. *Bd. of Suprs.,* 137 N. Y. 179 ; 62 Hun, 190 ; *Van Tassell* v. *Derrenbacher,* 56 Hun, 477 ; 123 N. Y. 661.) If such taxes were diverted to other purposes the beneficiaries thereof became liable to the bonded towns as for money had and received to the use of the latter. (*Bridges* v. *Bd. of Suprs.,* 92 N. Y. 570 ; *Strough* v. *Bd. of Suprs.,* 119 N. Y. 212 ; *Vinton* v. *Bd. of Suprs.,* 18 N. Y. S. R. 435 ; *Kilbourne* v. *Bd. of Suprs.,* 137 N. Y. 170 ; *Barnum* v. *Bd. of Suprs.,* 137 N. Y. 179 ; *Clark* v. *Sheldon,* 106 N. Y. 104.) The county having refunded to the towns the proportion of the state taxes paid by the railroads, an equity

arises in its favor as between it and the state to be reimbursed *pro tanto* by the latter, the state having received so much of such specific funds as goes to make up such proportion.  As to any moneys not so refunded the county is entitled to receive the same in trust for the towns.  (L. 1899, ch. 336; *Crowninshield* v. *Bd. of Suprs.*, 124 N. Y. 583 ; *Clark* v. *Sheldon*, 106 N. Y. 104.)  The cause of action is completely made out within the requirements of the 3d section of the enabling act.  (*Roberts* v. *Ely*, 113 N. Y. 131; *Chapman* v. *Forbes*, 123 N. Y. 537; *Dumond* v. *Carpenter*, 3 Johns. 183; *Sturdevant* v. *Waterbury*, 2 Hall, 453; *Ripley* v. *Gelston*, 9 Johns. 201; *Hathaway* v. *Cincinnatus*, 62 N. Y. 434; *Peyser* v. *Mayor, etc.*, 70 N. Y. 497; *Horn* v. *Town of New Lots*, 83 N. Y. 100 ; *Gerard* v. *McCormick*, 130 N. Y. 261; *Baker* v. *N. Y. Nat. E. Bank*, 100 N. Y. 31; *Royce* v. *Bryne*, 145 N. Y. 183; *I. & T. N. Bank* v. *Peters*, 123 N. Y. 273.)

WERNER, J.  Although this is the first action brought to this court by a county against the state under the enabling act of 1899 (Chap. 336), the principle here involved has been decided in actions brought by towns against counties under the acts of 1869 and 1871 (Chaps. 907 and 283).  (*Matter of Clark* v. *Sheldon*, 106 N. Y. 104; 134 N. Y. 335; *Bridges* v. *Bd. Supervisors Sullivan Co.*, 92 N. Y. 575; *Crowninshield* v. *Bd. Supervisors Cayuga Co.*, 124 N. Y. 585; *Kilbourne* v. *Bd. Supervisors Sullivan Co.*, 137 N. Y. 173; *Barnum* v. *Bd. Supervisors Sullivan Co.*, Id. 179.)

The only question that remains open for discussion is whether the principle applied in the cases above cited, as between the towns and counties, is controlling in the similar situation now occupied by certain counties toward the state. The incidental questions, which are suggested rather than argued, may be brushed aside with a bare mention.  1. The Statutes of Limitations, which were urged in bar of the action of the towns against the counties, have no application here, because this court has held, in *Bd. Suprs. Cayuga Co.* v. *State*

(153 N. Y. 281), that a claim against the state cannot be barred by lapse of time so long as there is no tribunal in existence with authority and jurisdiction to adjudicate upon it; and this equitable rule has also found expression in the enabling act (1899) which provides that lapse of time shall not be a barrier to valid claims filed within one year of the passage of the act.    2. The form in which relief shall be sought in such cases has been settled in *Strough* v. *Board of Supervisors Jefferson County* (119 N. Y. 212), upon the theory that an action as for moneys had and received is the appropriate remedy where there has been a diversion of taxes from the purposes for which they were assessed and levied, and a payment thereof to an officer or department of government not entitled thereto.    3. The school and road taxes excepted from the operation of the statutes of 1869 and 1871 are those collected in the various tax districts for local purposes; and the exception referred to does not relate to that portion of the state tax which may be devoted to highways and schools at large.    (*Kilbourne* v. *Bd. Supervisors, supra.*)    4. The taxes collected from such bonded railroads and paid to the county treasurer constituted a trust fund in his hands upon which the law had impressed a distinct purpose, and any diversion of it from that purpose was illegal.    (*Matter of Clark* v. *Sheldon, supra.*)

Upon the main question we take up the discussion with the observation that certain moneys derived from taxes levied upon railroads in towns which aided in their construction through the issue of bonds, were directed by law to be devoted to a certain purpose, namely, to the establishment of a sinking fund to be used in the redemption and cancellation of such bonds.    The depositary selected by the legislature for this purpose was the county treasurer.    The duty imposed upon him by statute was not performed.    A part of the moneys that should have gone into the sinking fund have been paid into the state treasury.    Under a precisely identical condition as between the towns and the county, the latter has been held liable to refund the moneys which it wrongfully, that is, illegally, obtained.

How is the case different as between county and state than it was between town and county?   One difference that did exist has been obviated.   The state could not be sued unless and until it created a tribunal to hear and determine such claims as the one at bar, while the county could be sued in the regular courts at any time within six years after the cause of action accrued.   Is there any other difference?   It is argued by the learned attorney-general that under the general tax laws of the state the county of Ulster has paid into the state treasury no more than it was required to pay; that its state tax, like that of every other county, is based upon its aggregate assessable property, which can neither be diminished nor increased by the taxing officers, and, therefore, the state has received no more than it was entitled and bound to collect.   This is the same argument that was presented in the cases cited; and it is a perfectly accurate statement of the law as far as it goes, but it stops just short of the point to which we are brought by the statutes of 1869 and 1871.   These latter statutes have provided that a certain portion of the moneys derived from taxes levied in the towns of the county of Ulster shall not go into the treasuries of the county or state, but into the custody of a trustee for a specified purpose.   The moneys have gone into the respective treasuries of county and state.   The same power that commanded the taxation of all property not exempt by law has devoted to a specific purpose the moneys derived from certain taxes.   This has been held to be within the constitutional prerogatives of the legislature *(Matter of Clark* v. *Sheldon, supra)* and to the extent that this supplementary and special legislative fiat is inconsistent with the general tax laws of the state, the latter must be held to have been *pro tanto* repealed or modified. The power to make laws includes the power to repeal and amend.   The right to tax is co-ordinate with, not superior to, the right not to tax.   Taxation for general purposes is hedged about by no sanctity that cannot be invoked in behalf of taxation for special purposes within constitutional limitations.

As the tax laws stood prior to 1869, it was the duty of the

counties to pay and the right of the state to receive the annual
state tax upon all assessable property. As the laws were
amended in 1869 and 1871 a certain class of newly-created
property was in effect and for a time exempted from taxation
for state purposes. The moneys which, under the general
laws, would have properly gone into the state treasury, were
directed by the legislature to be used in lightening the bur-
dens of the tax districts which had assumed unusual burdens
in creating this new property. No subsequent statute has
changed this situation.

As a part of the learned attorney-general's argument, to the
effect that the state has received no more than it was entitled
to receive from the county of Ulster, it is urged that there is
no inconsistency between the general tax laws and the statutes
of 1869 and 1871; that it was no less the duty of the county
treasurer to create the sinking fund referred to than it was
the obligation of the county to pay a state tax upon all of its
assessable property, but that all this could have been easily
accomplished by adding enough to the general tax to create the
sinking fund. We agree that there is no such inconsistency
between the general tax laws and the special statutes as to ren-
der them absolutely hostile to each other, but that is as far as
we can follow the argument. To us it seems plain to a demon-
stration that the railroads in question were to be taxed only
once, and that for a specified purpose. If the sinking fund
was not to be created and augmented by the proceeds of that
tax, it is apparent that there would either have to be an addi-
tional tax upon the railroads, or an increased tax upon the
county at large; or, if not that, at least a double tax upon the
bonded towns. One of three results would be inevitable.
If the railroads were taxed for general purposes and also to
create a sinking fund, they would be subjected to double taxa-
tion. If the bonded towns were to be taxed for general pur-
poses upon all their assessable property, and enough more to
create a sinking fund, they would not only be paying a two-
fold tax, but they would be subjected to the very burden from
which the statutes of 1869 and 1871 were designed to relieve

them. If the county at large were to be taxed for general purposes upon all assessable property, and for the purposes of the sinking fund as well, those towns and municipalities not bonded would be compelled to share the burdens belonging wholly to others. Surely, all these hypothetical possibilities suggested by counsel for the state would be much more inequitable than the claim of the plaintiff that the intention of the legislature was to relieve the primary tax districts from the burdens assumed in the creation of new taxable property, by devoting a portion of the moneys derived from its taxation to the payment of the debt created with the property.

Two other reasons are advanced for the dismissal of the plaintiff's claim. One is that the allowance of this and similar claims will create a deficiency in the revenues of the state; the other is that in the imposition of an additional general tax to supply this deficiency other counties will be compelled to share the burden which should be borne by the county of Ulster alone. This is in reality another statement of the argument already noticed.

Assuming, although not admitting, that there can be such a thing as a deficiency in the revenues of the state, it cannot affect the merits of the case at bar, because this court has held (*Matter of Clark* v. *Sheldon, supra*), in the case of a town against a county, under conditions where an actual legal deficiency was created, that it could have no effect upon the liability of a county whose treasurer had used the moneys derived from taxes upon railroads in bonded towns for purposes not authorized or permitted by law. There is, however, no such thing as a legal deficiency in the revenues of the state. Unlike a county or town, the state is not limited to the imposition of a tax exactly equal to its expenditures or obligations; on the contrary, it may, and in fact sometimes does, levy a tax that amounts to more or less than the actual needs for the current year. As a matter of business policy, economy and convenience, the annual aggregate income from taxation is doubtless based upon the anticipated outgo, but the power to tax for

more or less is not thereby affected. So, also, the contention that other portions of the state will be compelled to bear part of the burdens that really belong to a single county is answered by the suggestion that if the moneys which should have been applied to the purposes directed by the statute had not been paid into the state treasury, the other portions of the state would have borne no new or additional burden. They would simply have been deprived, for the time being, of the contribution which newly-created property would have added to the general fund.

The final question to be decided is, whether the county stands in such legal relation to the situation that it has a right of action on its own behalf and as trustee for the towns. Why not? Concededly, it has refunded to the towns some of the moneys which have been diverted from their proper destination, and its liability to refund the rest has been legally established. This liability is based upon the fact that it had no right to such moneys. A part of these moneys have found their way into the state treasury. The state has no more right thereto than the county. The county having paid to the state moneys that should have been deposited with a trustee for the benefit of the towns, the state should, *ex aequo et bono,* return it to the county. Apart from all this, however, the enabling act of 1899 has designated the county as the proper party to present the claim. The county is the only tax district that is brought into direct relations with the tax department of the state. Through the county these moneys reached the state, and there is manifest propriety and justice in providing that through the same agency they shall be returned to the proper custodian, the trustee designated by the state.

The order of the Appellate Division should be affirmed, with costs, and judgment absolute ordered for the plaintiff upon defendant's stipulation.

PARKER, Ch. J., GRAY, BARTLETT and CULLEN, JJ., concur; O'BRIEN and MARTIN, JJ., dissent.

Order affirmed, etc.