

# OFFICE OF
# THE ATTORNEY GENERAL
## AUSTIN, TEXAS

September 17, 1947

PRICE DANIEL
ATTORNEY GENERAL

FAGAN DICKSON
FIRST ASSISTANT

*overrule*
*0-4845 In Part Austin 2*

Hon. D. W. Stakes
General Manager
Texas Prison System
Funtsville, Texas

Opinion No. V-376

Re: Validity of emergency
appropriation when con-
strued as authorizing
payment of claims which
arose while the Legis-
lature was in session
and prior to the ef-
fective date of the Act.

Dear Mr. Stakes:

Your letter of July 3, 1947, reads:

"Early during the year 1947 it de-
veloped that certain appropriations, made
by the 49th Legislature for the support
and maintenance of the Texas Prison System,
would be exhausted before the end of the
fiscal year ending August 31, 1947. Since
the 50th Legislature was in session at that
time, a request was made for an emergency
appropriation on which to operate for the
balance of the year. For reasons unknown
to us, it was not until May 12th, 1947,
that the emergency appropriation was passed,
and signed by the Governor. In the mean-
time it was necessary to continue to place
orders for certain items, such as food for
inmates, feed for livestock, oil, gasoline,
gas and electric services. In some cases
the goods were delivered before the emergency
appropriation was made available and in
others not until afterward. There were bal-
ances in the funds at the time the orders
were placed, but in some accounts the
previously existing orders would have over-
drawn them.

"When we requested the emergency appro-
priation there were no actual overdrafts

but the proper Legislative Committees were told it was a real emergency, and I believe their intention was that that appropriation was to cover the entire need, that in fact the 50th Legislature was simply supplementing the previous appropriations of the 49th.

"In order to clarify our situation with the State Comptroller of Public Accounts, I shall greatly appreciate your opinion as to whether all of the purchases mentioned can be paid from the emergency appropriation (in all accounts after the original appropriations have been exhausted.)"

The emergency appropriation mentioned in your letter is Senate Bill 396, Chapter 191, Acts 50th Legislature 1947, page 333 Vernon's Texas Session Law Service. It reads as follows:

"An Act making an emergency appropriation for the Texas Prison System; and declaring an emergency.

"Be it enacted by the Legislature of the State of Texas:

"Section 1. There is hereby appropriated to the Texas Prison System out of the General Revenue Fund in the State Treasury not otherwise appropriated, the sum of Three Hundred Forty-nine Thousand Five Hundred ($349,500.00) Dollars, or so much thereof as may be necessary to supplement the appropriation made for the said Texas Prison System by the 49th Legislature, said appropriation to be for the remainder of the present fiscal year ending August 31, 1947, and to be in all things subject to the general provisions and riders attached to the General Departmental Appropriation Bill, Acts 1945, 49th Legislature, Chapter 378; the purposes for which this appropriation is made and the appropriation items supplemented by this appropriation being as follows, to-wit:

| "APPROPRIATION NUMBER | BUDGET REQUIREMENT |
|---|---|
| 68. Groceries, medical supplies, feed and seed Total J-909 ........ | $ 190,000.00 |
| 70. Maintenance and repairs of equipment (including gas, oil, tires, etc.) and repairs to buildings Total J-911 ........ | 12,000.00 |
| 71. General support and maintenance, including office supplies and expenses, rents, heat, light, water, power, ice, postage, telephone, telegraph, freight, express, drayage, per diem of Board Members, travel expense, transportation of prisoners, rewards, inquests, insurance, bond premiums, cleaning and janitor supplies, miscellaneour expense Total J-912 ........ | 50,000.00 |
| 72. New equipment (J-913) | 10,000.00 |
| Rider: Industrial revolving fund (9/1/46) cell block construction Total ............ | 87,500.00 |
| GRAND TOTAL ..........$ | 349,500.00 |

"Section 2.  The supplemental appropriation herein made shall be expended in all things in accordance with the provisions of the appropriation bill and in accordance with the original appropriation made for the several items supplemented by this appropriation.

"Section 3.  The fact that the Texas Prison System has practically exhausted the

appropriations made for the purposes pro-
vided in this Act, and the necessity for an
immediate appropriation to supplement the
same, create an emergency and an impera-
tive public necessity that the Constitution-
al Rule requiring bills to be read on three
several days in each House of the Legislature
be suspended, and same is hereby suspended,
and that this Act shall take effect and be
in force from and after its passage, and
it is so enacted.
"Passed the Senate, April 29, 1947:
Yeas 27, Nays 0; passed the House May 1,
1947: Yeas 117, Nays 8.
Approved May 12, 1947
Effective May 12, 1947."

You inquire only about claims in excess of
appropriations which were incurred "early during the
year 1947" and prior to May 12, 1947, when the sup-
plemental appropriation became effective. Since no
application was made to the Governor for approval of
deficiency warrants pursuant to Article 4351 V. C. S.,
and since you apparently do not intend to submit
claims which were incurred prior to January 14, 1947,
the date on which the 50th Legislature convened, to
the Comptroller for payment out of the supplemental
appropriation bill, we will not pass on the validity
of such claims at this time. The sole question here
is whether claims for items  "such as foods for in-
mates, feed for livestock, oil, gasoline, gas and
electric services " which were incurred between Jan-
uary 14, 1947, when the Legislature met, and May 12,
1947, the effective date of the supplemental appro-
priation, can be legally paid out of such appropria-
tion. We answer this inquiry in the affirmative.
Our ruling and the reasons therefor follow:

There are two controlling law questions
involved. The one has to do with an interpreta-
tion of the supplemental appropriation bill itself
to determine whether the Legislature intended for it
to cover expenses incurred prior to its effective date.

The other question is whether the Legis-
lature could by emergency appropriation passed dur-
ing the biennium lawfully authorize an expenditure
for items "such as foods for inmates, feed for live-
stock, oil, gasoline, gas and electric services"

which were used while the Legislature was in session and before the emergency appropriation became effective.

We will first discuss the supplemental appropriation bill, quoted above. It recites in Section 1 that the amount appropriated is "to supplement the appropriation made for the said Texas Prison System by the 49th Legislature, said appropriation to be for the remainder of the present fiscal year ending August 31, 1947, and to be in all things subject to the general provisions and riders attached to the General Departmental Appropriation Bill, Acts 1945, 49th Legislature, Chapter 378." Reference to the original bill (p. 907, General & Special Laws, 49th Legislature, 1945) shows that it contains the same five items under appropriation numbers 68, 70, 71, 72 and rider, which are included in the supplemental appropriation. The emergency clause on the Supplemental Appropriation Act recites "the fact that the Texas Prison System has practically exhausted the appropriations made for the purposes provided in this Act." It is perfectly obvious that the Legislature intended for the Supplemental Bill to be an addition to the original appropriation, without any hiatus intervening. In Commonwealth vs. Liveright (Pa.) 161 P. 697, the court said:

". . . . An appropriation does not speak from the date of approval of the measures, but from a consideration of that appropriation and other appropriations during the same biennium."

See, also, Graham vs. Childers (Okla.) 241 Pac. 178.

Article 4351 V. C. S. provides for obtaining deficiency warrants from the Governor "until the meeting of the next Legislature." On March 26, 1947, the Legislature had appropriated $138,241.47 "to pay the deficiency appropriations granted by the Governor, pursuant to Article 4351 of the Revised Civil Statutes of the State of Texas, 1925, prior to January 1, 1947". H.B. 228, ch. 57, Acts 50th Legislature, R.S. 1947,p. 83. There were no claims for the Prison System included in this deficiency appropriation. Considering the supplemental appropriation for the Prison System, above quoted, and the deficiency appropriation bill together,

we find nothing to indicate that the Legislature knew
of any deficiency claims incurred by the Prison System
prior to January 1, 1947, or that it intended for any
of the money appropriated in either of said bills to
be used for that purpose. We, therefore, interpret
the supplemental appropriation bill as covering the
period from January 14th, 1947, when the Legislature
convened, to August 31st, 1947, the end of the bien-
nium.

We next consider the power of the Legisla-
ture to enact an emergency appropriation having a
retroactive effect. It is well settled that "the
State Legislature may exercise all the legislative
powers of the people, subject only to the limitations
expressed in the Constitution of the State and of the
United States." Charles Scribner's Sons vs. Marrs,
Tex. Sup. Ct., 262 S.W. 722; Conley vs. Daughters of
the Republic, Sup. Ct., 156 S.W. 197.

We have concluded that Section 49 of Article
III, Texas Constitution, is not applicable here. The
moneys spent by the Prison System in excess of the sums
appropriated in the regular departmental appropriation
bill are not "debts" within the meaning of this section
of the Constitution. This section refers to "casual
deficiencies of revenue" and not to casual deficiencies
in appropriations. Terrell vs. Middleton, 187 S.W.
367, error refused; Attorney General's Opinion dated
February 21, 1923 to Hon. J. E. Quaid and signed by
L. C. Sutton, Assistant Attorney General, being No.
2482, Book 58, p. 203 of the Attorney General's
Opinons for 1922 - 1924. See, also, concurring opin-
ion of Justice Hawkins in Terrell vs. Middleton,
Tex. Sup. 191 S.W. 1138, at 1148, et seq.

We have concluded that Section 44, Article
III, Texas Constitution, is not applicable here.
This section prohibits the Legislature from appro-
priating "any amount of money out of the Treasury
of the State, to any individual, on a claim, real or
pretended, when the same shall not have been provid-
ed for by pre-existing law." The Supplemental Appro-
priation quoted above is not made to "any individual"
within the meaning of this section of the Constitution.
Austin National Bank vs. Sheppard, Tex. Sup. 71 S.W.
(2d) 242, 245. The supplemental appropriation is
made "to the Texas Prison System" which is a State in-
stitution and not to an "individual". This distinguish-

es this case from the case of Fort Worth Cavalry
Club vs. Sheppard, Tex. Sup., 83 S.W. (2d) 660,
where the appropriation was made to an individual.

If it is contended that Section 44, of
Article III, is applicable to the supplemental ap-
propriation bill, the answer is that this appropriation
is "provided for" by the same "pre-existing law" which
supported the regular Departmental Appropriation Bill.
That "law" consists of Section 58, Article XVI, Texas
Constitution and Articles 634 and 6166g, V. C. S.

Section 16 of Article I, Texas Constitution,
provides:

"No bill of a ttainder, ex post facto
law, retroactive law, or any law impair-
ing the obligation of contracts, shall be
made."

This provision prohibiting the enact-
ment of a "retroactive law" was intended to protect
vested rights of third parties. 9 Tex. Jur. 536,
537. Where there are no rights of third parties in-
volved, the Legislature has the same power to enact
retroactive laws as it has to enact prospective laws.
Dallas County vs. Lively, 106 Tex. 364, 167 S.W.
219; Blomstrom vs. Wells, Civ. App., 239 S.W. 227,
writ of error dismissed; Anderson County Road Dis-
trict No. 8 vs. Pollard, Tex. Sup., 296 S.W. 1062. We
have concluded that Section 16, of Article I, of the
Texas Constitution is not applicable to an emergency
appropriation such as we have here.

The Constitution authorizes the Legislature
to make emergency appropriations out of current re-
venue to take care of the current expenses of the
biennium.

Section 5, of Article III, Texas Constitu-
tion, provides in part as follows:

"The Legislature shall meet every two
years at such time as may be provided by
law and at other times when convened by the
Governor. When convened in regular session,
the first thirty days thereof shall be devot-
ed to the introduction of bills and resolu-
tions, acting upon emergency appropria-

tions, . . . . " (Emphasis added)

Section 49a of Article III, of the Texas Constitution, provides as follows:

"It shall be the duty of the Comptroller of Public Accounts in advance of each Regular Session of the Legislature to prepare and submit to the Govenor and to the Legislature upon its convening a statement under oath showing fully the financial condition of the State Treasury at the close of the last fiscal period <u>and an estimate of the probable receipts and disbursements for the then current fiscal year.</u>" (Emphasis added).

Section 6, of Article VIII, Texas Constitution provides, in part:

". . . . nor shall any appropriation of money be made for a longer term than two years, except by the first Legislature to assemble under this Constitution, which may make the necessary appropriations to carry on the government until the assemblage of the sixteenth Legislature."

Article 12, V. C. S. provides:

"The fiscal year of the State shall terminate on the thirty-first day of August of each year, and appropriations of the State government shall conform thereto."

After August 31st of the last year of a biennium the Legislature would have no authority to make emergency, deficiency or supplemental appropriations for the fiscal year just ended. If it undertook to do so by an appropriation bill, the appropriation bill would be invalid in so far as it conflicted with Article 12, V. C. S. Moore vs. Sheppard, Tex. Sup. 192 S.W. (2d) 559. At the Session following the close of a biennium the Legislature can only act on claims of individuals which are provided for by pre-existing law. During a biennium, however, the Legislature has full authority to appropriate within the current revenues all of the money which it finds is necessary

and required for the efficient maintenance and operation of the several State institutions during that biennium.

Subdivision 14(b) of the General Provisions of the Departmental Appropriation Bill passed by the 49th Legislature, 1945, page 945, reads:

"The appropriations herein provided are to be construed as the maximum sums to be appropriated to and for the several pruposes named herein, and the amounts are intended to cover, and shall cover the entire cost of the respective items and the same shall not be supplemented from any other sources; provided, however, that the provisions and restrictions herein shall not apply to the State Commission for the Blind; and, except as otherwise provided, no other expenditures shall be made, nor shall any other obligations be incurred by any department of this State, provided, however, that nothing herein shall prevent any department head from paying less than the maximum amount set forth herein for any salaried positions." (Emphasis added).

The language "except as otherwise provided" as used in subdivision 14(b), supra, includes the method of supplementing an appropriation as provided by Articles 4351 and 4351a, V. C. S., as well as by the supplemental appropriation act. These two methods, however, are the only means of supplementing a General Appropriation Bill.

The goods and services used by the Prison System during the time that the Legislature was in session and before the effective date of the Supplemental Appropriation Bill, which were not paid for out of the general appropriation, were in effect advanced to the Prison System. The Prison Board and the Board of Control on behalf of the Prison Board, had no authority under subdivision 14(b) of the Departmental Appropriation Bill, above quoted, to bind the State for the payment of moneys in excess of the sums appropriated. Those who furnished goods and services to the Prison System during this interval did so at their own risk. It is our considered opinion, however, that the Legislature had the power during the

biennium to provide money to pay for goods and services furnished the Prison System during that period, whether they were furnished before or after the effective date of the supplemental act.

The holding in this opinion does not mean that the Legislature, by an emergency appropriation, may grant "extra compensation" "after service has been rendered or a contract has been entered into, and performed in whole or in part." Sections 44 and 53, Article III, Texas Constitution. Nichols vs. State (Civ. App.) 32 S.W. 452; State vs. Holdeman, 163 S.W. 1020; Attorney General's Opinion No. O-1750.

It does mean, however, that within the biennium the Legislature may supplement an appropriation in the same manner and with the same authority as it could have passed the regular appropriation at the beginning of the biennium, provided that the moneys are not to be used for the purpose of paying "extra compensation" "after service has been rendered or a contract entered into, and performed in whole or in part," within the meaning of Sections 44 and 53, Article III, Texas Constitution. Dallas County vs. Lively, 106 Tex. 364, 167 S.W. 219; Graham vs. Childers (Okla) 241 Pac. 178, 182. In the last cited case the plaintiff sought an injunction against the State Treasurer to restrain him from paying out of a supplemental appropriation for text books which were received by the State but not paid for out of the regular appropriation. In holding that the supplemental appropriation was valid and in denying the injunction the court said:

"The mere fact that the Legislature, perhaps from lack of proper statistical information, failed to make an appropriation sufficient to carry out this purpose would in no wise preclude it from doing so, if it can be done within the constitutional limitations at a subsequent session held during the biennial term. The money appropriated was intended to be spent in supplementing or adding to the former appropriation what the facts demonstrated was necessary to properly carry out the purposes of the original act. . . .

"Plaintiff again says the act of the
state superintendent was in fact an attempt-
ed purchase of books in excess of the appro-
priation, and the method called a loan was
a subterfuge. Suppose this be conceded.
We are not to condemn or condone, except
in so far as the law drives us. It was
certainly the intent of the original bill
that the necessary books be supplied. They
were supplied, and even should it be conceded
in doing so the zeal of the officers led
them beyond the pale of the then legal ap-
propriation, there was no binding obliga-
tion on the sovereign Legislature to fol-
low such officers and make it good. But,
if, on the other hand, the Legislature
saw fit to do so, and authorized the pay-
ment, and its act did not step beyond the
constitutional limits, the courts cannot
strike down its deliberate enactment.
Federation v. Salt Lake County, 22 Utah,
6, 61 P. 222; New Orleans v. Clark, 95 U.S.
644, 24 L. Ed. 521; Guilford v. Cornell,
18 Barb. (N.Y.) 615; Lycoming v. Union,
15 Pa. 166, 53 Am. Dec. 575; People v.
Burr, 13 Cal. 343; Black Con. Law, 135;
Cooley Con. Law, 466. See, also, Cayuga
County v. State, 112 Misc. Rep. 517,
183 N. Y. S. 646; Oswego & Syracuse R. R.
Co. v. State, 226 N. Y. 351, 124 N. E. 8;
Ulster v. State, 177 N. Y. 189, 69 N. E.
370."

This is merely another way of saying that
"what the Legislature could have authorized in the
first instance it can ratify, if at the time of
ratification it has the initial authority to
authorize." Anderson County Road District No. 8 vs.
Pollard, Tex. Sup., 296 S.W. 1062, 1065.

We cannot, of course, give blanket appro-
val to all of the claims that may be presented for
payment out of each of the five items listed in the
Supplemental Appropriation Bill, quoted above. It
will be necessary for the Comptroller to examine each
claim individually in the light of this opinion to
determine whether or not it can be paid. No dis-
tinction is to be made between claims that arose be-
fore and after May 12th, so long as they arose after

the Legislature convened on January 14, 1947, and before August 31, 1947, the end of the biennium.

The answer to the second question in Attorney General's Opinion No. O-4865 is hereby overruled.

### SUMMARY

The five items of appropriation listed in the Supplemental Appropriation Bill for the Texas Prison System which was passed by the 50th Legislature and became effective on May 12, 1947, may be used to pay deficiencies in the same items in the regular biennial appropriation bill for the Prison System, where such expenses were incurred after the Legislature convened and prior to the end of the biennium. Ch. 191, S.B. 396, Acts 50th Legislature (1947) p. 333.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By *Fagan Dickson*
Fagan Dickson
First Assistant

FD:mw

APPROVED

*Price Daniel*
ATTORNEY GENERAL