Argued and submitted February ˙15, affirmed October 9, reconsideration denied December 13, 1985, petition for review allowed March 11, 1986 (300 Or 605)

COOS COUNTY,
*Appellant,*

*v.*

STATE OF OREGON,
*Respondent.*

(82-2384; CA A31234)

707 P2d 1243

John K. Knight, County Counsel, Coquille, argued the cause and filed the briefs for appellant.

Linda J. DeVries, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

■    This action was brought by Coos County to determine whether the county or the state holds title to a tract of forest property. The county sued in ejectment, seeking a judgment declaring that it is the owner in fee simple of the property and entitled to possession; the county did not seek damages.[1] The state asserted three affirmative defenses, counterclaimed for the value of improvements which it made to the property and cross-complained to quiet title in itself. The court held a trial on certain facts stipulated by the parties, determined a disputed issue of fact and resolved some issues of law in each party's favor. The court granted the state judgment on its defense that the county should be equitably estopped from claiming title, quieted title in the state and enjoined the county from asserting any title, claim, lien or interest in the property. The county appeals. The state asserts alternative bases to support the judgment. Although the state did not file a cross-appeal, it may assign errors without a cross-appeal when it seeks to sustain a judgment in its favor. *Artman v. Ray,* 263 Or 529, 533, 501 P2d 63 (1972).

The county's interest in the property dates back to 1930, at least. In that year, the property was owned by Robert and Eula Richards. Coos County levied $69.68 in *ad valorem* taxes and $22.40 in forest patrol assessments against the property in 1930; the lien for the taxes attached on March 1, 1930. Neither the taxes nor the assessment were paid. The

---

[1] The state was properly made a party defendant under ORS 30.360:

"(1) In any suit, action or proceeding brought in any circuit court of this state, affecting the title to real property on which the state or a state agency has, or claims to have, a lien, other than a suit, action or proceeding to foreclose tax liens or special improvement liens, the state may be made a party defendant, and its rights or interests adjudicated. When property has been or is acquired in the name of the state upon which there are valid, unpaid special improvement liens at the time of the acquisition, the state may be made a party defendant in a suit to foreclose the lien.

"(2) In any suit, action or proceeding brought in any circuit court of this state involving the title to real property where the state or a state agency has record title to contested real property, the state may be made a party defendant, and its rights or interests adjudicated.

"(3) In no event shall any money judgment be rendered or recovery made against the state in any suit, action or proceeding brought under the provisions of this section."

county levied taxes and forest patrol assessments in subsequent years, which the Richardses also did not pay. Coos County filed a suit to foreclose its lien in 1935 and in the same year obtained a judgment of foreclosure. The county was awarded the property in the sheriff's sale by default, there being no bidders for the property. The sheriff's deed to the county was recorded on April 6, 1936, in the Coos County Deed Records.

The state's interest in the property arose on July 31, 1930, when the Richardses mortgaged the property to the World War Veterans' State Aid Commission (WWVSAC) to secure a loan; the mortgage was recorded on August 7, 1930. The Richardses issued a deed in lieu of foreclosure purporting to transfer title in fee simple to the state on December 30, 1940, as consideration for release from a $6,000 debt. This deed was recorded in the Coos County Deed Records on January 9, 1941, and a satisfaction of WWVSAC's mortgage was recorded on January 14, 1941.

In its 1935 foreclosure suit, the county named WWVSAC as defendant, and it was served with a summons but did not appear. It appears that the state's lien could not have been affected by the foreclosure suit, because the state had not yet consented to have its interests in real property adjudicated by the state courts. *Federal Land Bank v. Schermerhorn*, 155 Or 533, 545, 64 P2d 1337 (1937).[2]

After it received the Richardses' deed, the state managed the property as if it were the owner. WWVSAC began to pay forest patrol assessments levied by the county in 1942.[3] The State Land Board, which took over management of

---

[2] Subsequent to that decision, the legislature enacted a law expressing the state's consent to be made a party defendant to certain actions affecting the title to real property in which the state has a lien. Or Laws 1937, ch 433, § 1, *codified as* ORS 30.360(1). *See* n 1, *supra*. This expression of consent excepts suits brought to foreclose tax liens.

WWVSAC was also authorized to pay taxes which constituted a prior lien on property subject to its mortgage. *See* 19 Op Atty Gen 60 (1938). Neither WWVSAC nor the state ever paid the taxes which the Richardses owed.

[3] The assessment and taxation records maintained by the Coos County Assessor's Office and the Coos County Tax Collector's Office did not reflect a change of ownership of the subject property by virtue of the Sheriff's 1936 deed to the county. The records did reflect a change of ownership with the Richardses' 1940 deed to the state. Because of that clerical action, the county has not assessed taxes against the property since 1940 but has levied forest patrol assessments on the state.

WWVSAC properties in 1943 and acquired its assets in 1952, continued to make those payments. The State Land Board sold and cut timber from the property and granted a mineral lease, easements, licenses and a right-of-way affecting the property. The state also undertook inventories and inspections of the property, and from 1980 to 1982 spent approximately $31,210 in intensive mapping, timber cruising, appraisals and other actions necessary to prepare for a land exchange with a private company. That company became aware of the county's interest in the property as a result of a title search, and the state requested a quitclaim deed from the county in order to effectuate the exchange. The county refused and requested a quitclaim deed from the state, which also refused. The county then commenced this action in ejectment to determine title to the property.[4] The county's claim of ownership is based on the recorded deed of 1936.

The state asserted three affirmative defenses. First, it claimed that, as sovereign, it is immune from suit by the county, a political subdivision of the state. Second, it asserted that the sheriff's deed to the county was void, because the county had no authority to foreclose a tax lien on property mortgaged to the state. It also claimed that the foreclosure sale was invalid, because a certificate of delinquency had not been issued. Third, it asserted that the county should be equitably estopped from claiming title by its acquiescence in the state's ownership for over 40 years. The state also asserted a counterclaim to recover the value of improvements it had made and assessments it had paid while in possession of the property in the event that title was quieted in the county's favor. It also asserted a cross-complaint to quiet title in the state and argued that it acquired title by deed or by adverse possession.

The parties entered into a pretrial stipulation in which they agreed to certain facts and presented issues of fact and law for the court to resolve. The issue of fact was whether the county had issued a certificate of delinquency for the

---

[4] To place this controversy in context, we briefly describe the property. It is 640 acres of mountainous forest. In the 1930s, it was an isolated area, mostly logged-off, with a value of less than $1,000. Today, most of the property is forested by 40 to 60-year-old stands of Douglas fir and hardwoods. Approximately 86 acres is a stand of 30-year-old Douglas fir. The approximate value of the property in 1981, including the land and timber, was $2,630,919.

unpaid 1930 taxes before instituting a foreclosure proceeding. The court resolved that issue in plaintiff's favor, finding that a certificate was issued. The court made the following rulings on the submitted issues:

"The Court makes the following finding[s] concerning the plaintiff's issues of law * * *:

"1.   R. E. Richards had no interest in the subject property to convey to the State of Oregon in 1940.

"2.   The defendant is not estopped from challenging the validity of the 1935 tax foreclosure proceeding or the validity of the deed received by the plaintiff in that proceeding.

"3.   The Statute of Limitations does not apply against the State of Oregon in its claims.

"4.   The plaintiff does not own the subject property by virtue of the Sheriff's Deed recorded in 1935, because the county is equitably estopped to deny title in the property to the state.

"The Court makes the following findings concerning the defendant's issues of law * * *:

"(1)   The county may sue to eject the state from property possessed by the state or to try title to the property.

"(2)   The county had authority in 1935 to foreclose for unpaid taxes, property mortgaged to the World War Veteran's State Aid Commission.

"(3)   The foreclosure was procedurally valid.

"(4)   The state cannot acquire title to property of the county by adverse possession.

"(5)   The county is equitably estopped from claiming title to the property.

"(5a)   If the foreclosure was valid the county took the property subject to the state's mortgage.

"(6)   If the title was quieted in the county, the county must pay the state for all expenditures, plus interest, made on behalf of the owner over the last 42 years.

"The Court allows the relief prayed for by the defendant as follows:

"(a)   Defendant is declared to be the owner in fee simple of the property.

"(b)   The title to the real property is quieted in the defendant.

"(c)   The plaintiff is enjoined from asserting any estate,

title, claim, lien or interest in the real property, or any portion thereof, and

"(d)   Defendant is awarded costs and disbursements."

The county assigns as errors the trial court's ruling that the county was estopped from claiming title and its granting defendant the relief requested. The state contends that these rulings were correct. The state also assigns error to the court's rulings that the county has authority to bring this action against the state and that the state cannot acquire title from the county by adverse possession.

We deal at the outset with the state's claim that the county has no authority to bring this action against the state. The argument has two facets. First, the state argues that it has not waived its immunity to a suit brought by a county to determine title to real property. Second, the state argues that a county, as a political subdivision of the state, lacks capacity to sue the state, its creator, in the absence of a specific constitutional or statutory provision authorizing such an action. This objection goes to the subject matter jurisdiction of the state courts.

We do not agree with the state's first contention. The legislature consented to the state's being sued to determine its rights and interests in real property by enacting ORS 30.360. *See* n 1, *supra.* ORS 30.360(2) subjects the state to jurisdiction in "any suit * * * involving the title to real property where the state or a state agency has record title to contested real property * * *." The state argues that this provision does not specify who may bring such an action. We think that the phrase "any suit" is broad enough to encompass an action brought by any party. This statute expresses the state's consent to be sued to try title to real property by any party, including a county.

The state also argues that the county lacks authority to sue the state, in the absence of a constitutional or statutory prohibition specifically authorizing such an action.[5] This

---

[5] The state argued for the first time in oral argument before this court that ORS 30.310 restricts to four the circumstances in which a county may sue in its corporate capacity and that a suit in ejectment is not included. ORS 30.310 provides:

"A suit or action may be maintained by the State of Oregon or any county, incorporated city, school district or other public corporation of like character in

argument is based on the theory that a county is a creation of the state, functions merely as an agent of the state and is completely subject to the legislative will. The state argues that, as an agent of the state, a county cannot sue the state because that would be as if a party were suing itself, and there would be no justiciable controversy in such a circumstance.

There are no Oregon cases that consider the capacity of a county to sue the state in ejectment or to vindicate any legal right.[6] We note at the outset that the legislature has granted counties broad powers to sue and be sued, to purchase and to hold real property and "[t]o do all other necessary acts in relation to the property and concerns of the county." ORS 203.010. In addition, the legislature has declared it

"* * * to have been and to be the public policy of this state that when a county has acquired or hereafter acquires real property by foreclosure for delinquent taxes, its title to such property shall have the utmost stability * * *." ORS 312.214.

In neither of these statutes are the county's rights limited in

---

this state, in its corporate name, upon a cause of suit or action accruing to it in its corporate character, and not otherwise, in the following cases:

"(1) Upon a contract made with the public corporation.

"(2) Upon a liability prescribed by law in favor of the public corporation.

"(3) To recover a penalty or forfeiture given to the public corporation.

"(4) To recover damages for injury to the corporate rights or property of the public corporation."

Assuming that the county is suing in its corporate capacity, and that an action in ejectment is not included in any of the four subsections, we do not understand this statute to restrict the county's general authority to sue and be sued. ORS 203.010(1). ORS 30.310 provides only that actions within these four categories must be brought in the county's corporate name and not otherwise. It does not provide that a county may sue in its corporate character only in these four circumstances. ORS 30.310 does not preclude a county from suing in ejectment in its corporate name.

The fallacy of the argument is apparent when one considers that ORS 30.310 applies also to actions which may be maintained by the state. If the statute prohibited the county's assertion of a claim for ejectment, it would also prohibit a similar claim, including a claim to quiet title, by the state.

[6] We note that in *Multnomah County v. Luihn et al.*, 180 Or 528, 178 P2d 159 (1947), *disapproved on other grounds, State ex rel v. Malheur County Court*, 185 Or 392, 203 P2d 305 (1949), the county sued for a declaratory judgment against the State Public Welfare Commission. There was no contention in that case that the county lacked capacity to sue the state. The court did reach the merits of the controversy. Because the argument was not raised there, the case is not authority for the proposition that the county may sue the state for a declaration of their respective rights. We cite it here merely to show that such an action is not unprecedented.

relation to the state. Moreover, we are mindful of the Supreme Court's position that the doctrine of sovereign immunity "should * * * be held within the narrowest limits to which the language of Article IV, § 24 is susceptible." *State v. Shinkle,* 231 Or 528, 539, 373 Pd 674 (1962).[7]

■    We hold that the county has the capacity to maintain this action against the state to determine title to the real property. We cannot see any impediment to the state's suing a county to try title. In such a case, the county must be able to defend itself and to assert its title. We do not see why the county should not be allowed to initiate a similar action. It has broad powers to sue, to hold property and to protect its interests in property which it holds. The state has waived its immunity by allowing "any suit" to try title to property in which the state has an interest. ORS 30.360. If we were to hold that the county could not maintain this action, the state would have unfettered license to do as it pleases with county property, and the counties could not be heard to complain. That result would fly in the face of the legislative grant of broad

---

[7] The state cites two cases from other jurisdictions in support of its contention: *State v. Bd. of Cty. Com'rs of Johnson Cty.,* 642 P2d 456 (Wyo 1982); *County of Albany v. Hooker,* 204 NY 1, 97 NE 403 (1912). These cases are of no guidance as to the law in Oregon. In *County of Albany v. Hooker, supra,* the county brought suit to have a statute declared void under the New York Constitution and to enjoin a state official's actions. The question for the court was whether the county had capacity to maintain this particular action. The court stated that counties have the power to sue and to be sued in their corporate capacity, but not in their governmental or political capacity. Counties act in a corporate capacity in acquiring and possessing real property. 204 NY at 10. The court held that the action was not brought in the county's corporate capacity and, therefore, could not be maintained. 204 NY at 18. This case does not stand for the broad proposition that a county may never sue the state. In fact, the negative implication of the holding is that, if the county acts in its corporate capacity by protecting its property, it would be able to maintain an action against the state. Other New York cases have recognized the capacity of political subdivisions of the state to sue the state in their corporate capacity, where statutes waived the state's immunity to suit. *See, e.g., County of Ulster v. State of New York,* 177 NY 189, 69 NE 370 (1904); *Cayuga County v. State,* 112 Misc 517, 183 NYS 646 (Ct Cl 1920); *Village of Hudson Falls v. State,* 111 Misc 304, 181 NYS 189 (Ct Cl 1920).

In *State v. Bd. of Cty. Com'rs of Johnson Cty., supra,* the county brought an action against the state for reimbursement of money paid to a court-appointed attorney under the state's public defender system. The Supreme Court of Wyoming held that "[t]he County being a division of the State, it cannot sue the State," because there is no adversity. 642 P2d at 458. Among its authorities, the court cited *County of Albany v. Hooker, supra.* We are not persuaded by this decision, for it appears to rest on an erroneous interpretation of the holding of *County of Albany v. Hooker, supra.* In addition, it does not discuss the state constitutional or statutory provisions which bear on the issue.

powers to counties over matters of county concern, ORS 203.010 and 203.035, and its policy that the county's title to real property acquired by foreclosure of tax liens "have the utmost stablility." ORS 312.214. We affirm the trial court's ruling that the county has capacity to bring this action.

The county assigns as error the trial court's ruling that it is estopped from claiming title to the property because of its acquiescence in the state's ownership for over 40 years. It argues both that an estoppel cannot be based merely on the acquiescence of a public body, citing *City of Molalla v. Coover et ux.,* 192 Or 233, 235 P2d 142 (1951),[8] and that the state cannot claim that the county is estopped when the state had, at least, constructive notice of the recorded deed to the county.

The elements of equitable estoppel are set forth in *Bennett v. City of Salem et al.,* 192 Or 531, 541, 235 P2d 772 (1951):

"'To constitute an equitable estoppel, or estoppel by conduct, (1) there must be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; and (5) the other party must have been induced to act upon it. * * *'"[9]

In this case, there were some affirmative acts by the county on which the state may have relied. The county assessor's office levied forest patrol assessments against the state. By those acts, the county treated the state as the owner of the property. The state argues that those acts should be interpreted as representations by the county that the state is the rightful owner and that the county did not intend to claim title based on the sheriff's deed.

The third element of equitable estoppel is that the

---

[8] The state argues that the holding of *City of Molalla v. Coover et ux,* 192 Or 233, 235 P2d 142 (1951), that the defense of equitable estoppel may not be based on the mere acquiescence of a public body, should not apply in an action between two governmental units. We need not decide that issue, because we find affirmative acts on which the defense may be based.

[9] The parties do not assert, nor are we aware of any authority supporting the proposition, that the elements of equitable estoppel in an action between two governmental bodies, or between a county and the state, should be different from those in an action between two private parties or between a private party and a governmental body.

party claiming estoppel "must have been ignorant of the truth." This element is also related to a consideration of whether the state's reliance on the county's representation was reasonable, which is essential to a claim of estoppel. In *Willis v. Stager,* 257 Or 608, 619, 481 P2d 78 (1971), the Supreme Court stated:

> "As for estoppel, it is well established that there can be no estoppel unless there was not only reliance, but a right of reliance, and that reliance is not justified where a party has knowledge to the contrary of the fact or representation allegedly relied upon. *Bradford v. Western Oldsmobile,* 222 Or 440, 452, 353 P2d 232 (1960). Thus, in order to establish an estoppel by failure to disclose a claim of title to real property, it must be shown that the party claiming the estoppel had no knowledge, actual or constructive, of the real condition of the title to the property in question. * * *"

*See also Hess v. Seeger,* 55 Or App 746, 761, 641 P2d 23, *rev den* 293 Or 103 (1982).

The facts of this case support a finding that the state had both actual and constructive knowledge of the deed to the county. In its opening brief to the circuit court, the state stated:

> "At the time the WWVSAC accepted Richards' deed in lieu of foreclosure, it was furnished an abstract of title showing the sheriff's deed to the county resulting from the county's tax foreclosure proceedings. Thus, the WWVSAC and Richards presumably were fully aware of the fact that the county had purportedly foreclosed on the property and had a sheriff's deed to Section 34. * * *"

By making that statement, the state admitted that it had actual knowledge of the deed and the county's claim to title to the property. Moreover, the state had constructive knowledge of the recorded deed by virtue of ORS 93.710(1).[10]

---

[10] ORS 93.710(1) provides:

"Any instrument creating a license, easement, profit a prendre, or a leasehold interest or oil, gas or other mineral interest or estate in real property or an interest in real property created by a land sale contract, or memorandum of such instrument or contract, which is executed by the person from whom the interest is intended to pass, and acknowledged or proved in the manner provided for the acknowledgment or proof of other conveyances, may be indexed and recorded in the records of deeds of real property in the county where such real property is located. *Such recordation, whether the instrument be recorded prior to or*

■    The state's knowledge of the recorded deed to the county does not defeat its claim of estoppel, because this case is not controlled by *Willis v. Stager, supra*, or *Hess v. Seeger, supra*. In those cases, one party claimed that the other should be estopped from asserting its title, because it failed to record its deed or otherwise to act consistently with its claimed ownership. This is not a case of "estoppel by failure to disclose a claim of title to real property," *Willis v. Stager, supra*, 257 Or at 619. Rather, in this case, the state claims that it was actively misled into believing that the county would not assert its claim to ownership and that it incurred expenses in reasonable reliance on these representations.

■    Both the county and the state can be charged with knowledge of the two recorded deeds. Acting with knowledge of the state's colorable claim, the county levied assessments on the state and acquiesced in its managing the property and its assertion of ownership for over 40 years. The county, with knowledge of its own claim to ownership, treated the state as the owner. It would not be equitable to allow the county to assert its title after it actively encouraged the state to believe and act with respect to the property as if it were the rightful owner for over 40 years. The trial court did not err in ruling that the county is estopped from asserting any interest in the property.[11]

Affirmed.

---

*subsequent to May 29, 1963, constitutes notice to third persons of the rights of the parties under the instrument irrespective of whether the party granted such interest or estate is in possession of the real property.* Any such instrument when so acknowledged or proved, or certified in the manner prescribed by law by any of the authorized officers, may be read in evidence without further proof thereof." (Emphasis supplied.)

[11] Although it is unnecessary, because of our disposition of this issue, to reach the state's argument that the trial court erred in ruling that the state cannot acquire county property by adverse possession, we note that the trial court did not err in its ruling. ORS 12.250 and 275.027.